**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03460-PAB-NRN

NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,

Plaintiff,

v.

JILL HUNSAKER RYAN, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT, in her official capacity,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S DUE PROCESS CLAIMS**

---

Defendant, Jill Hunsaker Ryan, the Executive Director of the Colorado Department of Public Health and Environment (hereinafter, the Department), respectfully files this Motion to Dismiss (Motion) Plaintiff's, the National Association of Wholesaler-Distributors (NAW), Due Process Claims for failure to state a claim. The undersigned conferred with NAW on this Motion as required by D.C.COLO.LCivR 7.1(a), and NAW opposes it.

## BACKGROUND

On July 30, 2026, NAW filed a complaint challenging Colorado's Producer Responsibility Program for Statewide Recycling (the Program), as codified at C.R.S. §§ 25-17-701 to 716 (the Act). *See* ECF No. 1. The Program, once fully implemented, will create a statewide recycling system which provides recycling to 700,000 additional

households across the state and more than doubles Colorado's current recycling rate. ECF No. 15-4 ¶¶ 3, 13, ECF No. 15-6; *see also* ECF No. 1 ¶¶ 30-31 and ECF No. 1-1 at 16. The Program funds this system by requiring producers of covered materials (paper producers and packaging materials) to internalize the costs of recycling these materials.

NAW's Complaint raises five constitutional claims: 1) unlawful delegation to a private party in violation of the Due Process Clause of the Fourteenth Amendment, 2) violation of the unconstitutional conditions doctrine of the Due Process Clause of the Fourteenth Amendment, 3) violation of the dormant Commerce Clause, 4) violation of the First Amendment's Freedom of Speech Clause, and 5) violation of the First Amendment's Freedom of Association Clause. *See, e.g.*, ECF No. 1 ¶¶ 13-17.

The Department moves to dismiss NAW's first two claims because they contain the same flaws the U.S. District Court for the District of Oregon found in NAW's challenge to a nearly identical recycling law in Oregon. *See, e.g.*, *Nat'l Ass'n of Wholesaler-Distributors v. Feldon*, No. 3:25-CV-1334-SI, 2026 WL 2532218 (D. Or. Aug. 27, 2026). There, NAW also asserted similar unlawful delegation and unconstitutional conditions claims,[1] but the Oregon Court rejected them.

For example, on February 6, 2026, during a hearing on Oregon's Motion to Dismiss all of NAW's claims and NAW's Motion for Preliminary Injunction, the Oregon

---

[1] NAW's Complaint in the Oregon case originally alleged a nondelegation claim under the Oregon Constitution and a procedural due process claim under the U.S. Constitution. However, NAW's Motion for Preliminary Injunction in the Oregon case argued its nondelegation claim as a due process claim, and NAW continued this approach in subsequent filings.

Court found that NAW did not sufficiently plead an unconstitutional condition claim because it had a choice—it could form its own producer responsibility organization. Ex. A, Transcript of Proceedings, at 97, *Nat'l Ass'n of Wholesaler-Distributors v. Feldon*, No. 3:25-CV-1334-SI, 2026 WL 775168, (D. Or. Feb. 6, 2026).[2] Although the Oregon Court also held that NAW could replead this claim, NAW did not, likely because, as it conceded to the Oregon Court, "its Unconstitutional Conditions claim is 'just a different analysis of the Commerce Clause or Due Process Clause.'" *Feldon*, 2026 WL 2532218, at *2, n.10 (full opinion attached as Ex. A to the Department's Resp. to Pl.'s Motion for Preliminary Injunction, ECF No. 15-1). Here, NAW has a similar choice of submitting an individual program plan. C.R.S. § 25-17-705(8).

Additionally, on August 27, 2026, the Oregon Court found for the State of Oregon on NAW's two remaining claims under the dormant Commerce Clause and the Due Process Clause of the Fourteenth Amendment. *Feldon*, 2026 WL 2532218, at *1. On the Due Process claim, the Oregon Court held that "because NAW challenges a state law under the Fourteenth Amendment [as opposed to a federal law under Article I], NAW must first show that it has a protected liberty or property interest before it may

---

[2] Although the Oregon Court also enjoined Oregon's recycling law during this hearing, the Oregon Court made its ruling under the "serious questions" standard, which is impermissible under Tenth Circuit law. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) ("Under *Winter [v. Nat. Res. Def. Council*, 555 U.S. 7, (2008)]*,*'s rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."). However, the Oregon Court held a trial on the merits quickly thereafter and ruled for Oregon. *See Feldon*, 2026 WL 2532218 at *2.

invoke the protections of the Fourteenth Amendment, either under a private nondelegation theory or under a *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976),] theory." *Id.* at *22. The court then concluded that "[t]his question presents a close call, but the Court agrees with [the State of Oregon] that there is no statutory basis for finding a threatened property or liberty interest" in the law. *Id.* at *25.

NAW makes the same mistakes here. NAW does not allege a protected interest under its private nondelegation doctrine claim or that it was in fact coerced to give up a protected right for its unconstitutional conditions claim. Thus, this Court should grant the Department's Motion to Dismiss.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff 'must plead facts sufficient to state a claim to relief that is plausible on its face.'" *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). "At the motion-to-dismiss stage, [a court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers*, 771 F.3d at 700 (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). However, a court does not need to accept "conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). "A district court may, however, consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002)). Additionally, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Id.* at 1105.

Finally, "[constitutional c]laims of facial invalidity often rest on speculation about the law's coverage and its future enforcement." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quotations omitted). "And facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quotations omitted). Accordingly, the decision to bring a facial constitutional challenge[3] "comes at a cost" and facial challenges are "hard to win." *Id.* In order to prevail on a facial challenge, a plaintiff must establish that "no set of

[3] NAW's claims are facial challenges based on the scope of relief requested. *See, e.g.*, ECF No. 1 ¶ 190.A (requesting the Court "[d]eclare that the Act violates the Due Process Clause of the Fourteenth Amendment because it gives economically self-interested private actors the power to regulate their competitors without sufficient statutory standards or agency oversight.").

circumstances exists under which the law would be valid" or that the law lacks a "plainly legitimate sweep." *Id.*

## ARGUMENT

### I. NAW's private nondelegation claim fails to identify a constitutionally protected property or liberty interest.

NAW must show the Program violates either the public nondelegation doctrine or the private nondelegation doctrine. "The public nondelegation doctrine limits Congress's ability to delegate regulatory authority to the executive branch, while the private nondelegation doctrine limits Congress's ability to delegate regulatory authority to nongovernmental actors." James M. Rice, *The Private Nondelegation Doctrine: Preventing the Delegation of Regulatory Authority to Private Parties and International Organizations*, 105 Cal. L. Rev. 539, 545 (2017); Bernard W. Bell, *FCC v. Consumers' Research: The Non-Delegation Doctrine and the Power to Tax*, 17 ConLawNOW 31 (2025) (accord).

"Challenging a federal delegation from Congress, however, is distinct from challenging a state delegation from a state legislature." *Feldon*, 2026 WL 2532218, at *22. "[T]he procedural side of the Due Process Clause of the Fourteenth Amendment does not create property rights; it merely protects them." *Id.* at *24 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972)). Thus, in this context, "there can be no 'intolerable and unconstitutional interference with personal liberty and private property' stemming from a state law without proof that there is, indeed, some implicated liberty or property." *Id.* at *22 (quoting *Carter v. Carter Coal*, 298 U.S. 238, 311 (1938)).

Consequently, "because NAW challenges a state law under the Fourteenth Amendment, NAW must first show that it has a protected liberty or property interest before it may invoke the protections of the Fourteenth Amendment, either under a private nondelegation theory or under a *Mathews*[, 424 U.S. 319,] theory." *Feldon*, 2026 WL 2532218 at *24.

NAW does not meet this standard. Instead, Count I of NAW's Complaint alleges facts that might support a federal private nondelegation claim, but do not a state private nondelegation claim. *See* ECF No. 1 ¶¶ 115-137. For example, through Count I, NAW first alleges that due process prohibits delegation of authority to private entities without government oversight, and that "[t]he Act violates the due-process rights of NAW's members in that way." *Id.* ¶¶ 117-18. These allegations imply that the violation by itself is sufficient to state a claim, just as NAW argued in Oregon. *Feldon*, 2026 WL 2532218 at *23 ("NAW asserts that an entity suffering from an unfair private delegation made by a state need not identify a specific protected liberty or property interest before challenging that state law under the Due Process Clause of the Fourteenth Amendment."). However, as the Oregon Court found, this is insufficient to support a state private nondelegation claim. *Id.* at *22-24.

NAW then alleges Colorado's designated Producer Responsibility Organization (PRO), here Circular Action Alliance (CAA), is self-interested because it is controlled by NAW's competitors and made up of larger companies which can better adapt to producer responsibility dues. ECF No. 1 ¶¶ 120-27. NAW also claims the Department's oversight is insufficient. *Id.* ¶¶ 128-30. However, again NAW does not identify any

protected property or liberty interests harmed by this alleged conflict and supposed lack of oversight. *See generally id.* ¶¶ 115-37.

Perhaps more importantly, NAW's claimed lack of oversight is contradicted by Attachment A (ECF No. 1-1) to its Complaint (CAA's Program Plan).[4] As provided in that document, "CAA Colorado participated in 19 advisory board and work group sessions prior to the plan proposal submission. Following the plan proposal submission, CAA Colorado participated in nine additional advisory board and work group sessions to collect feedback and comments on the plan proposal." ECF No. 1-1 at 45. The advisory board referenced is the Producer Responsibility for Statewide Recycling Advisory Board created by the Act and managed by the Department. C.R.S. § 25-17-704(1). All of the Advisory Board's meetings are open to the public. C.R.S. § 25-17-704(5). And, in total the Advisory Board held 28 public meetings to review CAA's Program Plan. ECF No. 1-1 at 45. It was only after this, an additional public comment period, and Department-required amendments that the Department approved CAA's Program Plan. *See, e.g.*, ECF No. 15-14 at 15-46 (Advisory Board comments), 90-91, 93-102 (Department-required amendments).

NAW alleges next that it is harmed because disputes over producer dues are resolved through binding arbitration and that producer dues are assessed on a retrospective basis. *Id.* ¶¶ 131-32. Although these allegations seem to imply that NAW

---

[4] The Department does not dispute the authenticity of CAA's Program Plan. However, this document is incomplete because it does not include the Program Plan Appendices. The Department attached the Appendices to its response to NAW's Motion for Preliminary Injunction. *See* ECF No. 15-14.

is alleging a right to an administrative appeals process or judicial review, NAW does not state that the Program creates this right. Thus, as the Oregon Court found, "[t]he Court need not reach the issue of whether arbitration itself constitutes sufficient process here, however, because the arbitration requirement is not derived from the [Oregon recycling law]." *Feldon*, 2026 WL 2532218 at *29. Additionally, as discussed below in Section II, NAW retains the right for injunctive relief under CAA's contracts.

NAW's belated attempt to identify protected interests in its September 28, 2026 Reply in Support of Motion for Preliminary Injunction (ECF No. 17) further supports the Department's Motion. In particular, NAW argues that the Act "deprives [NAW's members] of property by compelling them to pay the PRO money." ECF No. 17 at 3. But, this statement cannot save NAW's deficient Complaint. *See, e.g.*, *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) ("Plaintiff, however, cannot amend her complaint by adding factual allegations in response to Defendant's motion to dismiss.").

And, even if this post hoc argument was sufficient, it still does not demonstrate that the Department has deprived NAW of this interest. The Act does not require NAW's members to join the PRO. Instead, it prohibits producers from selling or distributing products using covered materials into the state, "unless the producer is participating in the program." C.R.S. § 25-17-708(1). NAW's members can choose how they participate by developing an individual program plan or joining the PRO. *See* C.R.S. § 25-17-705(8)(a). Thus, it is not the Department's actions, but NAW's members' choices, which have resulted in the alleged harms they complain of. Consequently, even if properly

alleged outside of the Complaint, these alleged rights are irrelevant. *See Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996) ("[T]here must be an 'element of deliberateness in directing the misconduct toward the plaintiff before the Due Process Clause is implicated.'" (citing *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir.1990)).

Finally, NAW attempts to distinguish the *Feldon* decision in its Reply in Support of Motion for Preliminary Injunction, by stating that the Oregon Court "did not address the interests protected in *Eubank [v. City of Richmond*, 226 U.S. 137, 143–44 (1912)], [*State of Washington ex rel. Seattle Title Tr. Co. v.*] *Roberge*, [278 U.S. 116, 121–22 (1928)], [*Carter v.*] *Carter Coal* [*Co.*, 298 U.S. 238, 311 (1936)], or *Amtrak* [aka *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 31, 34 (D.C. Cir. 2016)]." ECF No. 17 at 3. However, this is incorrect; the Oregon Court addressed *Carter Coal* in depth and cited both *Roberge* and *Amtrak*. *See, e.g.*, *Feldon*, 2026 WL 2532218 at *23-24.[5] More importantly, this argument misses the point. The inquiry here is whether NAW has alleged a protected property or liberty interest. It has not.

**II. NAW's unconstitutional conditions claim fails because many of its members agreed to CAA's contracts and even if not, the contracts still allow for judicial review.**

NAW's second claim under the Due Process clause continues this same theme. NAW claims that "the Act forces producers to submit to regulation by CAA, on terms CAA dictates, including a waiver of their right to bring any claims against CAA in state or

[5] The Oregon Court short cites the case NAW calls *Amtrak* as *AAR III*. *See, e.g*. *Feldon*, 2026 WL 2532218 at *23.

federal court." ECF No. 1 ¶ 140. But, this claim fails for the same reasons—NAW's members had a choice.

Here, the Act gives NAW's members three options: join the PRO, submit an individual program plan, or request an exemption by rule of specific packaging.[6] C.R.S. §§ 25-17-705(1), 705(8), and 703(13)(b)(XV). As to the second option, the Act states, "*as an alternative to participating in the program*, a producer may submit to the advisory board an individual program plan proposal." C.R.S. § 25-17-705(8)(a) (emphasis added). Although NAW quickly attempts to downplay this option as "cost-prohibitive" and "illusory," ECF No. 1 ¶ 143, it does not point to any attempts by its members to submit an individual program plan. And, as indicated in Attachment A to NAW's Complaint (CAA's Program Plan), this option is in fact viable. The Lubricants Packaging Management Association (LPMA) submitted an individual program plan, which, after amendment, the Department approved. *See* ECF No. 1-1 at 100; *see also* ECF No. 1 ¶ 47. And, CAA has committed to working with LPMA in its Program Plan, which is now

[6] The Act also contains numerous exemptions for covered materials and producers which result in significantly reduced obligations for true distributors. For example, the Act exempts "[p]ackaging materials used solely in business-to-business transactions where a covered material is not intended to be distributed to the end consumer." C.R.S. § 25-17-703(25)(b)(II). Further, distributors are the very last type of producer to be obligated, making it unlikely that true distributors will need to participate. Producers of packaging materials are obligated to pay into the Program in the following order: the brand owner directing or performing the manufacturing, the brand or trademark licensee directing or performing the manufacturing, the manufacturer, the importer into the U.S., or if none of these exist, the first distributor into the state. C.R.S. § 25-17-703(30)(a), (e); 6 Colo. Code. Regs. § 1007-2, Subsection 18.2.7(A).Therefore, if the brand owner has registered, a distributor of the same product does not need to register. Consequently, if NAW's members have in fact registered, they likely have registered because they are brand owners with control over their packaging.

binding after the Department's approval. *Id.* at 204 ("CAA Colorado will work with CDPHE, LPMA and any other PROs that are interested in submitting Individual Program Plans to develop an interim coordination process that ensures system coherence, addresses any potential gaps or areas of potential conflict, ensures fairness, and that will be publicly accessible and reviewed regularly."). Thus, NAW's allegations are contradicted by Attachment A to its Complaint, and Attachment A controls. *See Brokers' Choice*, 861 F.3d at 1105 ("if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.").

The Oregon Court found the fact that NAW had one other option to be enough. Specifically, it found that because NAW's members could form their own PRO, this was sufficient to dismiss NAW's unconstitutional conditions claim. *See* Ex. A at 97 ("I'm dismissing . . . plaintiff's . . . unconstitutional conditions claim. . . . If plaintiff really wants to replead that and show a specific unconstitutional condition, even though they arguably could form their own PRO, you're welcome to replead it."). Here, although the Act does not allow an additional PRO until 2029, producers can submit individual program plans. C.R.S. § 25-17-705(8). Because the Act does not define this term, the Department has reasonably construed it to cover plans submitted by groups of producers. *See* 6 Colo. Code Regs. § 1007-2, Subsection 18.1.6 (defining "person" to include corporations and associations). Hence, it has allowed LPMA to submit an individual program plan for automotive and petroleum product containers. *See* ECF No. 1 ¶ 47; *see also* ECF No. 1-1 at 100.

However, even if this option did not exist, NAW's unconstitutional conditions claim would still fail because NAW's members have not been "[f]orc[ed] . . to submit to regulation by this self-interested party, and den[ied] . . . judicial review of any disputes." ECF No. 1 ¶ 140. Although not required by the Act, CAA has developed two contracts for producers participating in the Program, a participant producer agreement (PPA) and a Colorado addendum to the PPA. *See* ECF No. 1 ¶ 65; Exs. B and C.[7] The PPA does not require binding arbitration. Instead, it states that "[i]f resolution cannot be reached by the Parties through non-binding mediation, . . . either Party may pursue *any remedies available to it under this Agreement, at law, in equity, or otherwise*, including, but not limited to, instituting an appropriate proceeding before a court of competent jurisdiction." Ex. B at § 5 (emphasis added). The Colorado addendum also does not foreclose judicial review. Although it does require binding arbitration, it also states that "nothing in this Section 8 shall limit the ability of a Party to seek injunctive relief from a court of competent jurisdiction ordering compliance with the Agreement or this Colorado Addendum or enjoining and restraining the continuation of a breach of the Agreement or this Colorado Addendum." Ex. C at § 8. Thus, NAW has not lost a protected right at all.

Finally, the Department has developed regulations which allow for an administrative hearing of eco-modulated[8] producer dues. 6 Colo. Code. Regs. § 1007-2,

---

[7] The Court may consider these contracts without converting the Department's motion into a motion for summary judgment because they are referenced in NAW's complaint, they are central to NAW's claims, and the Department does not dispute the documents' authenticity. *See Brokers' Choice*, 861 F.3d at 1103.

[8] The Department's regulations define "eco-modulation" as "the approach in which producer responsibility dues are structured and adjusted for the purpose of preventing,

Subsection 18.2.7(A) ("A producer who receives a final invoice from the PRO or individual producer . . . assessing annual dues for the Program may request a hearing before the advisory board."). Although this right does not apply to base dues, as shown by the producer dues chart in CAA's Program Plan, CAA plans to eco-modulate dues for 15 of the 26 covered material categories. ECF No. 1-1 at 190-91. Thus, NAW members may administratively appeal the majority of the producer dues categories should they need to. Further, this administrative review can also lead to judicial review under the Administrative Procedure Act if needed. 6 Colo. Code. Regs. § 1007-2, Subsection 18.2.7(F) ("A producer may seek judicial review of any final decision of the Director of HMWMD as permitted by § 24-4-106, C.R.S."). Thus, NAW's members retain their right to administrative and judicial review, and this Court should dismiss NAW's unconstitutional conditions claim for failure to state a claim.

## CONCLUSION

In sum, for the reasons stated above, this Court should dismiss NAW's Due Process claims for failure to state a claim.

Dated October 13, 2026.

PHILIP J. WEISER
Attorney General

s/ Rebecca J. Fischer

***Rebecca J. Fischer****
***Pawan Nelson****

---

minimizing or reducing negative environmental, social, economic, and health impacts of covered materials." 6 Colo. Code. Regs. § 1007-2, Subsection 18.1.6. For example, a reduction in the amount of packaging is an eco-modulation.

Senior Assistant Attorneys General
Natural Resources and Environment Section
Civil Litigation and Employment Law Section
Office of the Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6265
(720)508-6578
E-mail: rebecca.fischer@coag.gov
pawan.nelson@coag.gov
Attorneys for Colorado Department of Public Health and Environment
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2026, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S DUE PROCESS CLAIMS** by filing it with the Clerk of Court using the CM/ECF system which will send notification of such filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

s/ Zoë Doumanoff
***Zoë Doumanoff***
Senior Paralegal
Employment Practices and Civil Rights Unit
Civil Litigation and Employment Law Section
Office of the Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6574
E-mail: zoe.doumanoff@coag.gov