EXHIBIT C

# CIRCULAR ACTION ALLIANCE

## COLORADO ADDENDUM TO PARTICIPANT PRODUCER AGREEMENT

THIS COLORADO ADDENDUM TO THE PARTICIPANT PRODUCER AGREEMENT (the "**Colorado Addendum**") is entered into between Circular Action Alliance Colorado LLC ("**CAA Colorado**") and:

[______________________________________________]

and its subsidiaries ("**Company**") pursuant to the Participant Producer Agreement by and between Circular Action Alliance and its affiliates and subsidiaries and Company (the "**Agreement**"). CAA Colorado and Company shall be individually referred to herein as a "**Party**" and collectively as the "**Parties**."

WHEREAS, Circular Action Alliance is a voluntary, private nonprofit 501(c)(3) organization focused on helping producers comply with extended producer responsibility ("**EPR**") laws by delivering harmonized services and working with governments, businesses and communities to reduce waste and recycle more; and

WHEREAS, Circular Action Alliance and Company entered into the Agreement to set out the overarching terms and conditions under which Producers may elect to participate in various EPR Program(s) for which Circular Action Alliance serves as the designated producer responsibility organization ("**PRO**"), as well as the rights, obligations, and liabilities of Producers and Circular Action Alliance in connection therewith; and

WHEREAS, the Agreement contemplates that Circular Action Alliance and Company will enter into one or more state-specific addenda for Company to elect to participate in and be bound by the EPR Program in such state(s); and

WHEREAS, Circular Action Alliance has now organized a separate single-member limited liability company as a wholly owned subsidiary, CAA Colorado, which is also a 501(c)(3) non-profit organization, to serve as the representative stewardship organization for Producers in Colorado; and

WHEREAS, the State of Colorado enacted House Bill 22-1355, Producer Responsibility Program for Statewide Recycling Act, effective August 10, 2022, codified at Colorado Revised Statutes ("**CRS**") § 25-17-701 through § 25-17-716 (the "**Colorado Act**"), which provides for, in part, Producers registering with a producer responsibility organization that administers a producer responsibility program; and

WHEREAS, the Colorado Department of Public Health and Environment (the "**CDPHE**") is charged with implementing, administering, and enforcing the Colorado Act and has issued implementing regulations at Colorado Code of Regulations ("**CCR**") 6 CCR § 1007-2-18 (the "**Colorado Regulations**" and together with the Colorado Act, the "**Colorado EPR Law**"); and

DO NOT SIGN

WHEREAS, on May 1, 2023, CDPHE appointed Circular Action Alliance as the Producer Responsibility Organization in charge of implementing Colorado's new statewide recycling program created under the Colorado Act; and

WHEREAS, CAA Colorado has submitted a Program Plan proposal setting out how CAA Colorado intends to serve as a Colorado PRO and comply with the Colorado EPR Law which, on approval by the CDPHE, obligates CAA Colorado to take specific actions in respect of such compliance (the "**Colorado Program Plan**"); and

WHEREAS, Company has determined it is obligated as a Producer to participate in the Colorado EPR program under the Colorado EPR Law where CAA Colorado has been designated to serve as a PRO ("**Colorado EPR Program**"); and

WHEREAS, Company desires to be a Colorado EPR Program Participant, subject to the terms and conditions of the Agreement and this Colorado Addendum, in the Colorado EPR Program and for CAA Colorado to assist in fulfilling Company's applicable obligations under the Colorado EPR Law; and

WHEREAS, this Colorado Addendum sets forth the terms and conditions associated with Company's participation in CAA Colorado's Colorado EPR Program and delivery of such service provided by CAA Colorado and specific requirements under the Colorado EPR Law.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and in the Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and CAA Colorado agree as follows, subject to the terms and conditions of the Agreement and this Colorado Addendum:

1. **Definitions.** Capitalized terms in this Colorado Addendum will have the same meanings provided in the Agreement, unless a different definition is expressly provided in this Colorado Addendum, in which case the definition set forth in this Colorado Addendum will apply solely with respect to the Colorado EPR Program.

   1.1. Without limiting the definition of Applicable EPR Law in the Agreement, "**Applicable EPR Law**" includes the Colorado Act and Colorado Regulations, all as may be amended from time to time.

   1.2. **"Advisory Board"** has the same definition as Advisory Board in the Colorado EPR Law, including CRS § 25-17-703(2).

   1.3. **"Colorado Addendum Effective Date"** shall mean the date on which both Parties have executed this Colorado Addendum.

   1.4. "**Colorado Covered Materials**" means the covered products set forth in the Colorado EPR Law, including CRS § 25-17-703(13), and the Colorado Program Plan.

DO NOT SIGN

1.5. "**Colorado Participant**" means a Producer, including Company, that has signed this Colorado Addendum to the Agreement and is a Participant in the Colorado EPR Program.

1.6. "**Colorado Producer**" has the same definition as Producer in the Colorado EPR Law, CRS § 25-17-703(30).

1.7. **"Colorado Producer Reports"** means Producer Reports that Company is required to submit to CAA Colorado as a Participant in the Colorado EPR Program under this Colorado Addendum.

1.8. **"Colorado Reporting Categories"** means the covered materials reporting categories for Producer Responsibility Dues setting, including those set forth in Colorado EPR Law and the Colorado Program Plan.

1.9. **"Corporate Affiliates"** means two or more Colorado Producers for which data must be aggregated for purposes of determining eligibility for any small business exemption or whether Company is a Low Volume Producer under the Colorado EPR Law.

1.10. "**Dues Setting Methodology**" means the methodology used to set Producer Responsibility Dues for Participants in the Colorado EPR Program in accordance with the Colorado EPR Law, CRS § 25-17-705(4)(i)(II), and the Colorado Program Plan.

1.11. **"Eco-Modulation"** means adjustments made to Producer Responsibility Dues to incentivize Colorado Producer actions to reduce the environmental and public health impacts of covered products pursuant to CRS §§ 25-17-705(4)(i)(IV)-(V) and any eco-modulation bonus schedules set by CDPHE as authorized under C(1)(d).

1.12. **"Flat Fee"** means an optional flat rate for Producer Responsibility Dues applied to a Colorado Participant that is a Low Volume Producer that is not differentiated by material type.

1.13. **"Low Volume Producer"** means a Colorado Producer that qualifies for a Flat Fee pursuant to the Colorado Program Plan.

1.14. **"Minimum Recyclable List"** has the same definition as minimum recyclable list in the Colorado EPR Law, including CRS § 25-17-703(22).

1.15. **"Needs Assessment"** has the same definition as needs assessment in the Colorado EPR Law, including CRS § 25-17-703(23).

1.16. **"Postconsumer-Recycled-Content Rate"** has the same definition as post-consumer-recycled-content-rate in the Colorado EPR Law, including CRS § 25-17-703(28).

1.17. **"Producer Responsibility Dues"** has the same definition as producer responsibility dues in the Colorado EPR Law, including CRS § 25-17-703(31).

DO NOT SIGN

1.18. **"Responsible End Market"** has the same definition as responsible end market in the Colorado EPR Law, including CRS § 25-17-703(41).

1.19. **"Supply Weight"** means the total supply in pounds of Colorado Covered Materials sold in or into Colorado pursuant to the Colorado EPR Law, CRS § 25-17-703(13).

## 2. Obligation to Participate in the Colorado EPR Program.

2.1. **Determination.** Company shall be responsible for determining whether Company is obligated to participate in the Colorado EPR Program and pay Producer Fees in the form of Producer Responsibility Dues for participating in the Colorado EPR Program.

## 3. Reporting Obligations.

3.1. Company, for any period in which Company is a Colorado Participant, shall:

3.1.1. Submit data and information for Colorado Producer Reports via the Portal as required under the Colorado EPR Law and consistent with the Colorado Program Plan. Colorado Producer Reports shall include at a minimum the following information for the applicable reporting period, in the manner reasonably determined by CAA Colorado:

3.1.1.1. Qualitative information covered in the Colorado Producer Report, including, but not limited to, Company information on subsidiaries deemed a producer of any Colorado Covered Materials, brands of all Colorado Covered Materials, and all methodologies used to determine the amounts referred to in Section 3.1.1.3;

3.1.1.1.1. The methodology used must be in accordance with applicable best practices as outlined in CAA policies and guidance;

3.1.1.1.2. Upon request, Company shall provide additional information reasonably necessary to substantiate calculations, estimates, or methodologies to confirm the accuracy of their Colorado Producer Reports.

3.1.1.2. All Corporate Affiliates of Company, including Corporate Affiliates' legal name and a tax identification number (e.g. employer identification number or EIN), for purposes of identifying Low Volume Producers;

3.1.1.3. The Supply Weights of Colorado Covered Materials sold in or into Colorado by Company and all of its subsidiaries covered in the Colorado Producer Report pursuant to Section 3.1.4, accurately categorized within all applicable Colorado Reporting Categories, and including, but not limited

DO NOT SIGN

to, identification of the Postconsumer-Recycled-Content Rates, if required in the future.

3.1.1.4. If Company desires to request granting of an eligible Eco-Modulation bonus or incentive pursuant to the Colorado Program Plan, along with any required supporting information or explanations, Company shall comply with any Eco-Modulation requirements in Applicable EPR Law or the Colorado Program Plan;

3.1.1.5. If Company desires to assist with and/or pay for system improvements to increase the collection and recycling rate of a Company's Covered Material, or to facilitate the addition of the Covered Material to the Minimum Recyclable List, at the request of Company, Company will be assessed a special assessment to cover the agreed upon system improvements.

3.1.2. Submit all Colorado Producer Reports by the CAA Colorado reporting deadline each year, with the first such report to be made on or before July 31, 2025.

3.1.3. Update any previously filed Colorado Producer Reports to correct inaccuracies or update estimated supply data with more accurate data if it becomes available.

3.1.3.1. To support the Dues Setting Methodology, all corrections or other updates requested by CAA must be responded to within 30 days of CAA's request.

3.1.3.2. All producer-initiated adjustments and corrections requested by CAA must be made within 60 days of identifying the need for the update.

3.1.4. Provide Colorado Producer Reports for each individual subsidiary company, as represented by a tax identification number (e.g. employer identification number or EIN), unless otherwise approved for a variance by CAA Colorado.

4. **<u>Recordkeeping Obligations</u>**.

4.1. Company shall, upon the Colorado Addendum Effective Date and for as long as Company is a Colorado Participant, maintain and keep accurate records relating to its participation in the Colorado EPR Program and retain all such records for not less than five years after the record was created.

4.2. CAA Colorado, or its authorized representatives, shall have the right upon reasonable notice, during regular business hours while Company is a Colorado Participant and for a period of five years thereafter (in each case, up to one time per calendar year, unless the prior audit reveals a discrepancy greater than the lesser of 5% of Producer Responsibility Dues or $100,000, in which case, up to two times per calendar year) to audit such relevant documents, records, and supporting data in connection with the information submitted in the Colorado Producer Reports required under the Colorado EPR Law upon reasonable advance notice to Company. CAA Colorado shall bear the cost of any such audit unless

DO NOT SIGN

such audit reveals a discrepancy greater than the lesser of 5% of Producer Responsibility Dues or $100,000, in which case Company shall bear the reasonable, documented expenses of such audit. Company shall allow CAA Colorado or its authorized representatives, during normal business hours, to access and inspect such documents and records that are directly related to the Colorado Producer Reports in order to confirm completeness or accuracy of the information submitted by or on behalf of Company to CAA Colorado upon CAA Colorado's reasonable request.

5. **<u>Fee Obligations</u>.**

5.1. CAA Colorado shall set Producer Responsibility Dues annually on or prior to the date of the invoice issued by Circular Action Alliance hereunder using a Dues Setting Methodology that accounts for the amount and type of Colorado Covered Materials Producers supply into the state, pursuant to the Colorado EPR Law, CRS § 25-17-705(4)(i).

5.2. CAA Colorado may adjust Company's payable Producer Responsibility Dues owed pursuant to Section 5.1 of this Colorado Addendum to account for Eco-Modulation bonuses granted or maluses charged to Company.

5.2.1. In order to qualify for any Eco-Modulation bonuses or incentives, a Producer must be in full compliance with the Colorado Program Plan and Colorado EPR Law, as well as be in good standing with CAA Colorado requirements (provided Company has been informed of such requirements through webinars, newsletters, or other outreach efforts reasonably designed to communicate such requirements prior to being subject thereto), including having no undisputed payments currently overdue.

5.3. If Company is a Low Volume Producer, Company may elect to pay a Flat Fee set by CAA Colorado, provided Company satisfies the applicable criteria and annually certifies in writing on a form provided by CAA Colorado that Company qualifies as a Low Volume Producer and its opting into a Flat Fee. Company shall combine its data with all its Corporate Affiliates and consider the net weights of Colorado Covered Materials supplied for the purpose of determining eligibility as a Low Volume Producer.

5.4. CAA Colorado shall issue invoices to Company no more than two times per year for each year Company is a Colorado Participant, which will cover all net Producer Responsibility Dues owed and assessed against Company for the upcoming year as determined under Sections 5.1, 5.2, and 5.3 of this Colorado Addendum. CAA Colorado will assess such Producer Responsibility Dues in accordance with the Colorado EPR Law, the Colorado Program Plan, and Due Setting Methodology, as set out in the Colorado Program Plan.

5.4.1. To facilitate the potential payments of multiple Producer Fees to Circular Action Alliance under the various state EPR Program(s), all invoices shall be issued by

DO NOT SIGN

Circular Action Alliance. Company acknowledges and agrees that Circular Action Alliance is authorized to issue invoices on behalf of and in place of CAA Colorado for all Producer Responsibility Dues owed pursuant to this Colorado Addendum. Invoices will clearly identify CAA Colorado or the Colorado EPR Program. Company shall pay all invoiced Producer Responsibility Dues to Circular Action Alliance as specified in the applicable invoice which shall satisfy any Producer Responsibility Dues owed to CAA Colorado.

5.5. Recognizing the compressed timeline in the first year, Company shall remit all Producer Responsibility Dues set forth on the 2025 invoice no later than 30 days after the invoice date. Following that first-year invoice, unless a later payment date is specified on an invoice, Company shall remit all Producer Responsibility Dues set forth on an invoice no later than 45 days after the invoice date.

5.6. For any overdue payments or instances of inaccurate reporting of Colorado Covered Materials under the Colorado EPR Law, Company shall be responsible for any late fees, fines, or interest permitted under the Colorado EPR Law in accordance with CAA Colorado requirements (provided Company has been informed of such requirements through webinars, newsletters, or other outreach efforts reasonably designed to communicate such requirements prior to being subject thereto), which may include, but not be limited to:

5.6.1. A late charge of no more than one percent (1%) per month of Producer Responsibility Dues owed past the applicable due date, compounded monthly on amounts owed beyond the due date; and/or

5.6.2. An inaccurate reporting charge, as liquidated damages and not as a penalty, in the amount of up to $5,000 or an amount equivalent to the Producer Responsibility Dues associated with the inaccurately reported Colorado Covered Materials, whichever is greater, owed in the year in which the instances of inaccurate reporting of Colorado Covered Materials occurred. Provided, however, that no inaccurate reporting charge will be assessed by CAA Colorado for any inaccurate reporting self-identified by Company and corrected within 60 days of identifying the inaccuracy.

5.7. A Colorado Participant that is a newspaper, magazine, or periodical publisher may be given the opportunity to fully or partially fulfill its financial obligations through media and advertising contributions pursuant to the in-kind contribution provision in the Colorado EPR Law, CRS § 25-17-705(4)(h), and the Colorado Program Plan.

**6. <u>Compliance</u>.**

6.1. Company acknowledges that for CAA Colorado to serve as a Colorado PRO, CAA Colorado must comply with the Colorado EPR Law and the Colorado Program Plan approved by CDPHE, which will also necessitate compliance by Producers.

DO NOT SIGN

6.2. CAA Colorado's compliance duties with respect to the implementation of the Colorado EPR Program have included or will include, but are not limited to the following:

6.2.1. Conducting market research to identify Producers that are unregistered, but may be obligated to register as a Colorado Participant under the Colorado EPR Law;

6.2.2. Conducting audits of Colorado Producer Reports as specified in Section 4 to identify outlier data and information and request supporting information from the applicable Producers;

6.2.3. Commissioning independent audits of a Producer Report or other information that CAA Colorado may require the Colorado Participants to supply to CAA Colorado pursuant to the Colorado EPR Law and/or the Colorado Program Plan;

6.2.4. Reporting findings of audits of Producer Reports to CDPHE;

6.2.5. Supplying CDPHE with other information, notifications, reports or data supplied by Company to CAA Colorado related to the status of the Company's compliance with CAA Colorado's requirements, the Colorado EPR Law and/or the Colorado Program Plan as CDPHE may require;

6.2.6. Inform Colorado Participants of their noncompliance, whether with regard to CAA Colorado requirements, the Colorado Program Plan including Producer Responsibility Dues obligations, or the Colorado EPR Law, and work with the Colorado Participant to resolve the noncompliance in a timely manner; and

6.2.7. After CAA Colorado notifies the impacted Colorado Participant or producer and provides a reasonable opportunity to cure, escalation to CDPHE for enforcement when a Producer is out of good standing with CAA Colorado requirements and CAA Colorado remedies have not resolved the issue.

6.3. Company shall provide CAA Colorado with any notice from CDPHE of Company's actual or alleged failure to comply with the Colorado EPR Law in accordance with Section 2.5 of the Agreement. If such notice resulted because of CAA Colorado's noncompliance with the Colorado Program Plan specifications and/or Colorado EPR Law, CAA Colorado will attempt to negotiate with CDPHE in an effort to protect CAA Colorado and Colorado Participants from state actions, liabilities or penalties resulting solely from the Colorado EPR Program's material non-compliance, including, where appliable, attempting to secure extensions of state deadlines, waivers of state penalties, or other relevant accommodation.

**7. Term & Termination.**

7.1 Term**.** This Colorado Addendum will take effect on the Colorado Addendum Effective Date and will continue until terminated pursuant to this Section 7.

DO NOT SIGN

7.2 Termination by CAA Colorado. Subject to the cure period set forth below, CAA Colorado may terminate this Colorado Addendum for breach by Company of a material term or condition of this Colorado Addendum or violation of any material requirements, guidelines, or rules for the Colorado EPR Program, including, without limitation, failure to keep required records, non-filing of Colorado Producer Reports, or non-payment of Producer Responsibility Dues. Prior to such termination, CAA Colorado shall give Company written notice of such breach, which if related to payment shall include the method of calculation of Producer Responsibility Dues owed to provide a basis for the breach for nonpayment. Company shall have a period of sixty (60) days in which to effect a cure to such default. If such default is not cured within such sixty (60)-day period, then this Colorado Addendum shall terminate immediately without further notice.

7.3 Termination by Company. Company may terminate this Colorado Addendum immediately upon written notice to CAA Colorado in the event that it rejects a proposed amendment to the Colorado Addendum, provided that Company initiates a discussion of such proposed amendment (including any intent to reject the proposed amendment or terminate this Colorado Addendum) within thirty (30) days after such amendment is noticed by CAA Colorado.

7.4 Mutual Termination Rights. Company or CAA Colorado may terminate this Colorado Addendum upon providing to the other Party prior written notice of its intention to terminate. Sixty (60) days' notice is required for termination by Company and one hundred eighty (180) days' notice is required for termination by CAA Colorado. In the event of termination pursuant to this provision, Company shall ensure it makes full payment of undisputed Producer Responsibility Dues owing in current year (and in the following year if the supply reporting cycle has already concluded for the following year, and any fee adjustments are due from previous years) within forty-five (45) days following the date of such written notice of termination, whether provided by CAA Colorado or Company. Unpaid Producer Responsibility Dues past this time frame may be forwarded to a collection agency, as determined in CAA Colorado's sole discretion.

7.5 Notification to CDPHE. In the event of a termination, CAA Colorado will notify CDPHE of Company's cancelled registration under the Colorado EPR Program with a similar notice directed to the Company.

7.6 Effect of Termination. The provisions concerning dispute resolution and governing law will survive the termination of this Colorado Addendum for any reason.

8. **Dispute Resolution.** If resolution cannot be reached by the Parties through good faith efforts to resolve any dispute themselves or through non-binding mediation, any dispute, controversy, or claim arising out of or relating to this Colorado Addendum, including the interpretation, scope, or breach thereof or the extent of the Parties' obligations under the Colorado EPR Law, shall be resolved by binding arbitration. In the absence of any mutual agreement by the Parties reached at the time a dispute arises, the seat of arbitration shall be Denver, Colorado and shall be conducted in accordance with the then effective JAMS arbitration rules. Judgment on the

DO NOT SIGN

award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Each party shall bear its own costs and expenses, including attorneys' fees, and an equal share of the arbitrator's fees and any administrative fees of arbitration. The decision of the arbitrator(s) shall be final and binding on the parties, and the parties waive any right to appeal the decision, to the extent a waiver can be made under applicable law. Notwithstanding the foregoing, nothing in this Section 8 shall limit the ability of a Party to seek injunctive relief from a court of competent jurisdiction ordering compliance with the Agreement or this Colorado Addendum or enjoining and restraining the continuation of a breach of the Agreement or this Colorado Addendum.

9. **Governing Law.** This Colorado Addendum will be construed in accordance with the laws of the State of Colorado.

10. **Effect of Addendum.** Except as expressly supplemented by this Colorado Addendum, all terms of the Agreement shall remain in effect and are incorporated herein. This Colorado Addendum and the Agreement represents the entire agreement between Company and CAA Colorado regarding participation in the Colorado EPR Program. If there is, or there arises, any inconsistency between any term in the Agreement and a term in this Colorado Addendum, this Colorado Addendum will prevail and apply without exception, and priority and precedence will be given to this Colorado Addendum. This Colorado Addendum may only be amended in writing in the same manner as permitted by Section 14 of the Agreement.

*[Signatures appear on following pages]*

DO NOT SIGN

**IN WITNESS WHEREOF**, the Parties hereto have caused this Colorado Addendum to be executed by their Authorized Representative as of the date written below.

---

**THIS IS A PREVIEW COLORADO ADDENDUM ONLY.**
**It is not to be signed by producers.**
**Contact Producer.Support@circularaction.org for a signable version.**

**For more information on registration, please visit:**
**https://circularaction.org/registration**

DO NOT SIGN