**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,

Plaintiff,

AUTO CARE ASSOCIATION,

Proposed-Intervenor Plaintiff,

v.

JILL HUNSAKER RYAN, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT, in her official capacity.

Defendant.

Case No. 1:26-cv03460

**MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT OF AUTO CARE ASSOCIATION'S MOTION TO INTERVENE AS PLAINTIFF**

**MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT OF AUTO CARE ASSOCIATION'S MOTION TO INTERVENE AS PLAINTIFF**

Proposed-Intervenor Plaintiff Auto Care Association ("Auto Care Association"), by and through undersigned counsel, respectfully moves under Federal Rule of Civil Procedure 24(a)(2) to intervene as a plaintiff in this action or, in the alternative, under Rule 24(b)(1)(B) for permissive intervention. In support, Auto Care Association states as follows:

## I. INTRODUCTION

Auto Care Association seeks intervention to protect the distinct interests of its members, which are directly regulated under Colorado's Producer Responsibility Program for Statewide Recycling Act and uniquely subject to overlapping obligations administered by two private entities. The requirements for intervention as of right are satisfied, and permissive intervention is independently warranted. Auto Care Association's proposed Complaint in Intervention is filed concurrently with this Motion.

## II. BACKGROUND

Plaintiff National Association of Wholesaler-Distributors ("NAW") filed this action challenging the constitutionality of Colorado's Producer Responsibility Program for Statewide Recycling Act (the "Act"), Colo. Rev. Stat. §§ 25-17-701 et seq. The Act establishes an extended producer responsibility program under which regulated "producers" must register, report covered materials, pay dues, and comply with program requirements.

Auto Care Association is a not-for-profit national trade association that represents the independent auto care industry and automotive aftermarket, comprising nearly 3,000 direct members and affiliate companies and representing approximately 150,000 businesses in the automotive aftermarket industry, including about 10,000 in Colorado. Declaration of Edward A. Hughes Jr. ("Hughes Decl.") ¶¶ 3–4. At least 14 direct members have a primary Colorado address, and many members operate across multiple states, including Colorado, from facilities both within and outside the state. *Id.* ¶¶ 4, 6–7. Its members manufacture, distribute, sell, and install motor vehicle parts, accessories, tools, equipment, materials, supplies, and services. *Id.* ¶ 3. Many are mid-sized companies that exceed the Act's small-business exemption but lack the scale and in-house compliance resources of large producers; Auto Care Association estimates that over 200 members fit this category. *Id.* ¶ 5. Advocacy is Auto Care Association's primary mission, and it advocates at the state, agency, and federal levels on issues of importance to the auto care industry, including by providing members a Colorado-specific EPR compliance toolkit. *Id.* ¶¶ 8, 10. Members range from national retailers to manufacturers and remanufacturers. For example, Auto Care Association's members include AutoZone, Inc. ("AutoZone"), a Tennessee-headquartered retailer of automotive replacement parts and accessories with 6,766 U.S. stores, including 114 in Colorado, that has been a member since 1979, Declaration of Jason McNeil ("McNeil Decl.") ¶¶ 2–3, 6; O'Reilly Automotive Stores, Inc. ("O'Reilly"), a Missouri-based auto-parts retailer that operates approximately 6,600 facilities nationwide, including 134 in Colorado, and employs over 87,000 people, Declaration of Scott Cannon

("Cannon Decl.") ¶¶ 2–3; Old World Industries, LLC ("Old World"), an Illinois manufacturer of antifreeze/coolant, diesel exhaust fluid, windshield washer fluid, wiper blades, and automotive lighting that has been a member since 1986, Declaration of Warren Morrow ("Morrow Decl.") ¶¶ 2–3, 6; DMA Industries, LLC ("DMA"), a South Carolina manufacturer of suspension components, lift supports, brake wear sensors, and fuel pumps, Declaration of Fred Snow ("Snow Decl.") ¶¶ 2–3; and TERREPOWER, LLC ("TERREPOWER"), a remanufacturer of starters, alternators, turbochargers, brake calipers, and other nondiscretionary parts, Declaration of Mark Nugent ("Nugent Decl.") ¶¶ 2–4.

Auto Care Association members face a burden distinct from that faced by other producers. The Colorado Department of Public Health and Environment ("CDPHE") approved an Individual Program Plan ("IPP") operated by the Lubricants Packaging Management Association ("LPMA"), also known as Interchange 360, for packaging used with petroleum and automotive products. CDPHE then informed CAA that producers of petroleum and automotive products must register directly with LPMA and report primary packaging for products on LPMA's list to LPMA, while reporting secondary packaging and paper to Circular Action Alliance ("CAA"). Hughes Decl. ¶ 11. Member companies learned of this requirement through direct communication with CDPHE, and CDPHE has specifically instructed at least one member that it must report and pay fees to both CAA and LPMA. *Id.*; Cannon Decl. ¶ 25. As a practical matter, the vast majority of producers subject to the Act have no alternative to joining CAA and LPMA, because independent compliance would be prohibitively expensive. Hughes Decl. ¶ 9.

This direction creates a dual-obligation structure unique to the automotive aftermarket. For different portions of the packaging associated with a single product, many Auto Care Association members must register with, report to, and pay dues to both LPMA and CAA. Morrow Decl. ¶¶ 8; Cannon Decl. ¶¶ 8–9; McNeil Decl. ¶¶ 8–9. For example, Old World's diesel exhaust fluid is sold in a plastic container inside a cardboard shipper; the plastic container must be reported to LPMA while the cardboard shipper for the very same unit must be reported to CAA. Morrow Decl. ¶ 13. Each entity has its own

registration process, participation agreement, reporting portal, data format, material categories, deadlines, and fee schedule, and there is no apparent coordination between them. *Id.*; Cannon Decl. ¶ 13; McNeil Decl. ¶ 12. Many Auto Care Association members have registered with both CAA and LPMA, and members received registration deadlines and began receiving dues invoices from both entities in 2026. Hughes Decl. ¶¶ 12–13.

Members' declarations describe the resulting burdens. Compliance has required substantial manual effort across multiple business functions: Old World has reviewed more than 100 SKUs and identified and compiled weights for every packaging component, with at least 10 employees across five functional areas devoting time since approximately May 2025, Morrow Decl. ¶ 12; O'Reilly has engaged over 100 suppliers, built new IT applications, and dedicated well over 800 hours to baseline compliance, Cannon Decl. ¶¶ 12, 18; AutoZone has devoted hundreds of internal labor hours and approximately $390,000 in third-party consultant and software costs, McNeil Decl. ¶¶ 11, 16(a); DMA estimates its EPR effort equates to one full salaried position and required a custom data table, Snow Decl. ¶ 12; and TERREPOWER has had to coordinate sales, procurement, packaging, logistics, accounting, legal, and IT personnel and modify its reporting systems, Nugent Decl. ¶¶ 12–13.

Members also pay substantial and unpredictable fees. CAA has invoiced O'Reilly more than $350,000, and O'Reilly anticipates LPMA fees exceeding $500,000. Cannon Decl. ¶ 15. CAA has invoiced AutoZone more than $160,000 and LPMA more than $415,000, and in Colorado alone AutoZone has paid more than $575,000 to the two entities. McNeil Decl. ¶¶ 14, 16(b). LPMA assesses a flat $0.56 per gallon of fluid sold, applied retroactively to April 1, 2025, regardless of container size, weight, or material, so that the LPMA fee for the plastic container of a single 2.5-gallon unit of diesel exhaust fluid is approximately $1.40. Morrow Decl. ¶¶ 17(b), 19(a). In October 2026, LPMA notified producers that it was changing its reporting methodology to one based on material type while tripling fees in many instances, without any opportunity for producer input of which O'Reilly is aware. Cannon Decl. ¶ 13.

Neither CAA nor LPMA discloses its fee methodology, and members are aware of no formal method to appeal fees or obtain refunds. Morrow Decl. ¶¶ 15, 17(b), 23; McNeil Decl. ¶¶ 15, 32; Snow Decl. ¶¶ 15, 21; Cannon Decl. ¶¶ 16, 27; *see also* Nugent Decl. ¶ 17 (ability to predict future EPR costs is limited).

LPMA's participation agreement is offered on a take-it-or-leave-it basis: fees and covered products are whatever LPMA's Board sets "from time to time," the Board may amend the agreement unilaterally, participants are bound for a minimum three-year term, and the agreement contains no dispute-resolution mechanism or refund right. Morrow Decl. ¶ 19(a)–(b), (d)–(e). LPMA's founding members include competitors of Auto Care Association members, and LPMA describes its program as "producer-controlled." *Id.* ¶ 19. LPMA also covers diesel exhaust fluid and windshield washer fluid, neither of which contains petroleum, assessing its flat per-gallon fee rather than CAA's weight-based fee for the same plastic container. *Id.* ¶ 22. These burdens extend beyond Colorado, because members negotiate national pricing and cannot isolate Colorado costs, so fees are borne by customers in states with no EPR program. *Id.* ¶¶ 16, 21; Cannon Decl. ¶ 24; McNeil Decl. ¶¶ 23–24; Snow Decl. ¶¶ 16, 20; Nugent Decl. ¶¶ 18, 23.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) requires a court to permit intervention, on timely motion, by an applicant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The Tenth Circuit applies four factors: "(1) the application is 'timely'; (2) 'the applicant claims an interest relating to the property or transaction which is the subject of the action'; (3) the applicant's interest 'may as a practical matter' be 'impair[ed] or impede[d]'; and (4) 'the applicant's interest is [not] adequately represented by existing parties.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (alterations in original); *see also Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't*

*of Interior*, 100 F.3d 837, 840 (10th Cir. 1996). Rule 24 is liberally construed in favor of intervention. *Utah Ass'n of Counties*, 255 F.3d at 1249.

## IV. ARGUMENT

### A. Auto Care Association Is Entitled to Intervene as of Right Under Rule 24(a)(2)

#### *1. This Motion Is Timely*

Intervention will not unduly delay or prejudice adjudication of the original parties' rights. The case is in the early stages, and the scheduling conference has not yet occurred. Moreover, as a practical matter it is probable that had Auto Care Association simply filed a complaint and notice of related cases, the complaint would have been consolidated with this matter.

#### *2. Auto Care Association Claims a Significant Protectable Interest*

Auto Care Association's members are regulated as "producers" under the Act, and many face the unique dual-obligation structure requiring compliance with both CAA and LPMA. Hughes Decl. ¶¶ 6, 11, 13; Morrow Decl. ¶¶ 7–9; Cannon Decl. ¶¶ 7–9; McNeil Decl. ¶¶ 7–9; *see also* Snow Decl. ¶¶ 8–10 (producer obligations to CAA); Nugent Decl. ¶¶ 9–10 (same). Their obligations include registration, detailed reporting, and payment of dues to two private compliance entities for different packaging associated with the same product. Morrow Decl. ¶ 13; Cannon Decl. ¶¶ 13, 15; McNeil Decl. ¶¶ 12, 29. These concrete regulatory and economic burdens, which members have already incurred through fees paid, personnel time, and systems changes, give Auto Care Association, on behalf of its affected members, a direct, substantial, and legally protectable interest in the outcome of this case. Morrow Decl. ¶ 17; Cannon Decl. ¶ 18; McNeil Decl. ¶ 16; Snow Decl. ¶¶ 12, 14; Nugent Decl. ¶¶ 16, 20. These interests are germane to Auto Care Association's purpose, as advocacy on regulatory issues affecting the auto care industry is its primary mission. Hughes Decl. ¶ 8.

The proposed Complaint in Intervention asserts four constitutional claims under 42 U.S.C. § 1983: Due Process (unconstitutional conditions); Dormant Commerce Clause; First Amendment (compelled speech and association); and Due Process (unlawful delegation to private parties). Unlike NAW's complaint, it does not assert a First Amendment claim for prohibiting speech. And it seeks distinct relief that NAW does not: a declaration that CDPHE's approval of LPMA's IPP and its incorporation into CAA's Program Plan were ultra vires and contrary to the Act, including Colo. Rev. Stat. §§ 25-17-705(8)(a), 25-17-708(2)(a), and 25-17-705(4)(i)(II). Although the claims overlap with NAW's, Auto Care Association pleads each through facts specific to its members, including the dual CAA/LPMA compliance, LPMA's fee structure, and the absence of any LPMA forum to challenge base dues, and the prospect of additional IPPs and PROs that would multiply those burdens.

3. *Disposition of This Action May Impair Auto Care Association's Ability to Protect Its Interest*

If this action proceeds without Auto Care Association, the resulting judgment could impair its members' ability to protect their interests. A ruling concerning the Act's constitutionality that does not address the LPMA-specific and dual-obligation issues could leave Auto Care Association members subject to the Act's requirements without judicial review of the specific burdens they face. The stare decisis effect of rulings in this action, and the potential application of preclusion principles in later litigation, could further impede a future challenge concerning the dual-obligation structure. Rule 24(a)(2) requires only that impairment be possible as a practical matter, and that standard is met here.

4. *Existing Parties Do Not Adequately Represent Auto Care Association's Interest*

The burden to show inadequate representation is "minimal." *Utah Ass'n of Counties*, 255 F.3d at 1254. An applicant need show only that existing representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Although NAW and Auto Care Association share the objective of challenging the Act's

constitutionality, Auto Care Association's interests diverge in important respects:

(a) Auto Care Association members face the dual-obligation CAA/LPMA structure that NAW's original complaint does not address.

(b) LPMA's IPP was approved specifically for petroleum and automotive products, which are central to Auto Care Association members' businesses. Hughes Decl. ¶¶ 3, 11. As a broader distributor trade association, NAW does not have the same focused interest in LPMA-specific issues. Auto Care Association, by contrast, has tracked CAA's and LPMA's implementation of the Colorado Program Plan and its impact on its members. *Id.* ¶ 9.

(c) Auto Care Association alleges distinct facts concerning LPMA's flat $0.56-per-gallon fee, LPMA's failure to disclose its fee methodology, and whether directing all initial dues to "planning activities" is consistent with the Act's five-percent administrative-cost limit. Morrow Decl. ¶¶ 17(b), 19(a), 22; McNeil Decl. ¶¶ 12, 18; Cannon Decl. ¶ 13.

(d) Auto Care Association advances the distinct legal theory that CDPHE's approval of LPMA's IPP was ultra vires, including because CDPHE has required members to report to two producer responsibility organizations even though Colorado's regulations do not permit more than one until 2029. Cannon Decl. ¶ 25; Hughes Decl. ¶ 11; *see also* McNeil Decl. ¶ 29 (Interchange 360 is not a designated PRO).

These differences create a meaningful possibility that NAW will not develop or litigate Auto Care Association's LPMA-specific factual and legal issues. That possibility satisfies Rule 24(a)(2)'s minimal inadequate-representation requirement.

### B. In the Alternative, Permissive Intervention Is Warranted Under Rule 24(b)

Rule 24(b)(1)(B) permits intervention, on timely motion, by an applicant who "has a claim or

defense that shares with the main action a common question of law or fact." Auto Care Association's proposed claims challenge the same Act, the same regulatory structure, and many of the same actions alleged in NAW's complaint. They therefore share common questions of law and fact with the main action.

Intervention will not unduly delay or prejudice adjudication of the original parties' rights. The case is in the early stages, and the scheduling conference has not yet occurred. Auto Care Association can participate within the schedule the Court establishes, and its participation will permit related constitutional and LPMA-specific issues to be resolved efficiently in one action.

## V. CONFERRAL CERTIFICATE

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Auto Care Association conferred with counsel for Plaintiff and Defendant via email on October 13-14, 2026 regarding the relief sought in this Motion. Plaintiff's counsel indicated that the oppose and Defendant's counsel indicated that they consent.

## VI. CONCLUSION

For the foregoing reasons, Auto Care Association respectfully requests that the Court grant its Motion to Intervene and permit Auto Care Association to intervene as a plaintiff in this action.

Dated: October 15, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ Amir. A Shakoorian
Amir A. Shakoorian, (Atty. Reg. No. 62545)
1801 California Street, Suite 5000
Denver, Colorado 80202
Amir.Shakoorian@hklaw.com

Rafe Petersen (*pro hac vice* forthcoming)

Maggie P. Pahl (*pro hac vice* forthcoming)
800 17th St., NW, Suite 1100
Washington, DC 20006
Rafe.Petersen@hklaw.com
Maggie.Pahl@hklaw.com

*Attorneys for Auto Care Association*

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I electronically filed the foregoing Motion to Intervene and Memorandum of Law in Support of Auto Care Association's Motion to Intervene as Plaintiff using the Court's CM/ECF system, which will send notice of the filing to all counsel of record who are registered CM/ECF participants.

/s/ Amir. A Shakoorian
Amir A. Shakoorian, (Atty. Reg. No. 62545)
1801 California Street, Suite 5000
Denver, Colorado 80202
Amir.Shakoorian@hklaw.com