Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,

Plaintiff,

AUTO CARE ASSOCIATION,

Proposed-Intervenor Plaintiff,

v.

JILL HUNSAKER RYAN, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT, in her official capacity.

Defendant.

Case No. 1:26-cv03460

**DECLARATION OF WARREN MORROW**

**DECLARATION OF WARREN MORROW IN SUPPORT OF AUTO CARE ASSOCIATION'S MOTION TO INTERVENE**

I, Warren Morrow, declare the following:

1. I am Chief Operating Officer at Old World Industries, LLC ("Old World") a member of Auto Care Association. I submit this declaration in support of Auto Care Association's Motion to Intervene in the above-captioned matter. The following facts are within my own personal knowledge. If called upon as a witness, I could and would competently testify thereto.

**Background**

2. Old World is a company incorporated in Illinois and headquartered in Illinois. The company is privately held. Old World operates nationally, including in Colorado. Old World operates approximately five manufacturing facilities nationwide and employs over 500 people.

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

3. Old World manufactures and distributes several products for the automotive aftermarket including antifreeze/coolant, diesel exhaust fluid, windshield washer fluid, wiper blades, and automotive lighting. Old World sells these products direct to retailers, to distribution networks that resell to retailers, direct to consumers via e-commerce platforms, and to commercial end users.

4. Old World relies on cross-state supply chains to produce and sell goods, including suppliers and retailers potentially subject to regulation by Colorado's EPR program such as resellers in both the retail and distribution spaces.

5. Old World makes packaging decisions for every product it manufactures and distributes, including the private-label products it manufactures for retail customers. Under Colorado's program, however, the reporting and fee obligation for a private-label product rests with the retailer as brand owner, not with Old World. Old World therefore controls the packaging for a substantial volume of product it does not report and pays no fees on, while the retailers who do report that product depend on Old World for the data to do so.

6. Old World is a member of the Auto Care Association and has been since 1986. Old World's current CEO currently serves as Chairman of Auto Care Association's Board of Directors, and many Old World employees have served on the Board and committees across multiple disciplines over the years.

**Participation in Colorado EPR**

7. Old World has been classified by Colorado as a "producer" for purposes of its EPR program.

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

8. As a producer under Colorado's EPR program, Old World understands Colorado's interpretation to be that Old World must register with and submit fees to two separate, private entities: Circular Action Alliance ("CAA") and Interchange 360 ("Interchange 360" or "LPMA").

9. Old World has registered with CAA and executed CAA's national Producer Participation Agreement.

10. Determining whether certain products contain covered materials, whether Old World qualifies as an obligated producer of those materials under Colorado's EPR program, and what portions of which packaging Old World must report to CAA and Interchange 360 is complicated because (i) Old World manufactures and sells a product mix that includes both private-label and Old World-branded products; (ii) Old World manufactures and sells some products that are interpreted to fall within the purview of Interchange 360, some that are interpreted to fall within the purview of CAA, and some that are not covered materials under the law; (iii) products are sold to different types of customers who may or may not be covered entities under Colorado's EPR program; and (iv) distribution occurs through complex supply chains subject to varied contractual arrangements.

11. Old World's product mix creates operational complexity under Colorado's program well beyond that faced by a producer with a single product category. Each of Old World's product lines uses different packaging, and within a product line the packaging varies by product and unit size. For example:

(a) Wiper blades are sold in combination packaging consisting of a cardboard backer card and a plastic clamshell or sleeve. The plastic components carry different resin identification codes depending on the product.

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

(b) Automotive lighting is sold either in all-cardboard packaging or in blister packaging consisting of a cardboard backer and a plastic blister, depending on the number of bulbs in the pack.

(c) Diesel exhaust fluid is sold in combination packaging consisting of a plastic container inside a cardboard shipper, with a cap made of a different plastic than the container.

(d) Antifreeze and windshield washer fluid are sold in containers in which the bottle, the cap, and the label are each made of a different plastic.

(e) Fluid products are sold in sizes ranging from one-gallon bottles to 55-gallon plastic or steel drums to 330-gallon totes. Old World understands that packaging for products sold to commercial and industrial customers is not currently covered by Colorado's program. Identical packaging is therefore a covered material or not depending solely on the customer who purchased it, and Old World must classify every sale by customer type in addition to product and packaging component. Where Old World sells to a distributor that resells to both retailers and commercial end users, Old World cannot determine at the time of sale whether the packaging will ultimately be treated as covered.

**Compliance and Operational Burden**

12. Old World has expended substantial internal resources in efforts to comply with Colorado's EPR requirements. Old World currently has no enterprise software capable of generating the reporting Colorado's program requires, and the entire process has been manual. Personnel from Old World's legal, operations, finance and accounting, sales, and information technology functions have all devoted time to the program. That work has included: (a) reviewing each of the more than 100 SKUs Old World sells into Colorado to determine whether its packaging

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

is a covered material and, if so, whether it falls within the scope of CAA or Interchange 360; (b) identifying each packaging component of each SKU, including bottle, cap, label, blister, backer card, and shipper, and assigning each component to a material category; (c) compiling component-level packaging weights from Old World's specifications and its packaging suppliers; (d) segmenting Colorado sales data by customer type to separate covered consumer-channel sales from uncovered commercial sales; (e) responding to requests from private-label customers for component packaging weights so those customers can meet their own reporting obligations; (f) building manual procedures to perform the above, because Old World's existing systems do not capture packaging or sales data in the form the program requires; and (g) contacting customers to obtain data on what volume was ultimately sold in Colorado, including individual outreach to each direct retail account and requests through distributors to their downstream resellers. Old World has also retained outside counsel to analyze its obligations under the program. Old World does not track employee time by project, and because Old World must comply with EPR programs in several other states at the same time, it cannot precisely separate the time spent on Colorado's program from time spent on the others. At a minimum, however, 10 employees across five functional areas have devoted time to Colorado EPR compliance since approximately May of 2025, none of which would have been necessary but for the program, and the work is ongoing.

13. This burden is exacerbated by the requirement to report to two separate, private, third-party entities in CAA and Interchange 360. Each entity has its own registration process, participation agreement, reporting portal, data format, material categories, reporting deadlines, and fee schedule. Old World's product lines are split between them: wiper blades and automotive lighting fall within CAA, and antifreeze, diesel exhaust fluid, and windshield washer fluid in consumer-sized containers fall within Interchange 360. Old World has therefore had to classify

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

every SKU and every packaging component against two separate program scopes rather than one. The split does not even follow product lines. Old World's diesel exhaust fluid is sold in combination packaging consisting of a plastic container inside a cardboard shipper, and Old World understands that the plastic container must be reported to Interchange 360 while the cardboard shipper for the very same unit must be reported to CAA. Nothing in either program prevents the same packaging from being reported to and assessed by both entities, and Old World is not aware of any coordination between them. Interchange 360's own producer guidance acknowledges this risk. As a result, Old World must maintain two parallel compliance processes for a single state.

14. The burden imposed by Colorado's EPR program is extensive for a single state. And this burden is magnified by the fact that Old World must comply with EPR programs in at least six other states with more programs coming online each month. Each state program has its own product classifications, producer definitions and obligations, and legal requirements, and at least one other state also requires Old World to report and pay fees to multiple third-party organizations.

**Fee Impacts**

15. Old World understands that fees are set based on past data, using fee methodologies that are not available to Old World, making it essentially impossible for Old World to predict future fees or modify future behavior to avoid future fees.

16. To sustain profitability on many products, Old World would have to pass Colorado EPR fees on to customers, including customers in states other than Colorado and customers in states with no EPR packaging programs.

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

**Costs Incurred as a Result of Colorado EPR**

17. Old World has incurred, and will continue to incur, significant costs due to Colorado's EPR Program. Those costs mainly come from three categories:

(a) Compliance infrastructure and personnel. As described in paragraph 11, personnel across five functional areas have devoted time to SKU classification, packaging component identification, weight compilation, sales segmentation by customer type, and private-label customer support, all through manual processes.

(b) Fees. Both CAA and Interchange 360 publish fee schedules, but neither discloses the methodology by which the fees are set or the basis on which they may change. Interchange 360 assesses its "implementation" fee on the volume of fluid sold, at a flat rate of $0.56 per gallon rather than on the weight or type of packaging, so a container's fee bears no relationship to the amount of material to be recycled. For a single 2.5-gallon container of diesel exhaust fluid, the Interchange 360 fee for the plastic container alone is approximately $1.40. Interchange 360 also imposes a "planning fee" that is retroactive and began running before Colorado's EPR law even took effect, making it impossible to attempt to accrue for the fees in advance.

(c) Commercial and administrative burden. Private-label customers for whom Old World manufactures products now require component-level packaging weight data from Old World in order to meet their own reporting obligations, which Old World must compile and supply at its own expense. Old World also anticipates that retail customers will seek to shift their own EPR-related costs to suppliers through pricing and contract terms; that it will need to renegotiate customer and distributor agreements to allocate reporting responsibility, as Interchange 360's own guidance instructs; and that it will need

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

to build audit-ready records to substantiate quarterly reporting to two private entities with no established appeal process.

**Overall Business Impact and Irreparable Harm**

18. Colorado's EPR Program affects Old World's ability to compete, serve customers, operate efficiently, make pricing decisions, and freely participate in markets.

19. Colorado's EPR Program subjects Old World to significant uncertainty, lack of transparency, and enforcement risk that disrupt basic business planning. To sell its products in Colorado, Old World understands that it must enter non-negotiable agreements with two private entities, CAA and Interchange 360. In the case of Interchange 360, its founding members are Old World's competitors. Old World is thus required by state law to submit to a private-entity regulator governed by its competitors.

Furthermore, the LPMA Participation Agreement for Colorado is offered on a take-it-or-leave-it basis, and under it, among several other issues:

(a) The fees Old World must pay are whatever amounts LPMA's Board of Directors sets "from time to time" and posts on LPMA's website (§ 1.1(n)), with no methodology, cap, or notice and comment requirement. LPMA's current fee is a flat $0.56 per gallon of fluid sold, applied retroactively to April 1, 2025, regardless of the size, weight, or material of the container. Fees are payable from the effective date on LPMA's schedule regardless of when Old World signs (§ 2.2(b)).

(b) Which of Old World's products are subject to the program is likewise whatever LPMA's Board determines "from time to time" (§ 1.1(q)), and LPMA's Board may amend the agreement itself and any of its Rules unilaterally (§§ 1.1(t), 2.2(d)).

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

(c) LPMA decides in its "sole discretion" whether to approve Old World's participation at all (§ 3.1).

(d) Once approved, Old World is bound for a minimum three-year term with automatic annual renewal and a 180-day notice period to withdraw (§§ 3.1, 3.2(a)), while LPMA may terminate Old World on 30 days' notice for noncompliance with its own Rules (§ 3.2(b)).

(e) The agreement contains no dispute resolution mechanism, no process for challenging a fee assessment, and no right to a refund of fees wrongly assessed.

LPMA describes its program as "producer-controlled." The producers who control it include Old World's competitors.

20. Old World is aware of additional harms from the Colorado EPR Program to its customers, its supply chain partners, and the general public. Old World's fee obligation is measured by what it sells into Colorado, but Old World cannot determine that figure from its own records; it must obtain it from its customers. Old World sells through two channels. It sells directly to large big-box retailers and national chains, which generally have sales data at the store level but which Old World must individually contact, request data from, and follow up with, an outreach effort across many accounts. It also sells to automotive distributors and jobbers, who resell to a large network of smaller independent retailers, service shops, gas stations, and convenience stores that Old World has no capacity to reach directly. For that channel, the data has to flow from the small reseller to the distributor to Old World, and the smaller the reseller, the less likely it is to track sales at that level at all. The program therefore pushes a data-collection burden down through Old World's entire distribution network to businesses that are not themselves obligated under the Act. Retailers for whom Old World manufactures private-label product face the mirror image of

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

this problem: they are the obligated producers, but they depend on Old World to supply the component-level packaging data they cannot generate themselves. Consumers in Colorado bear the cost of the fees through higher prices.

21. Colorado's EPR Program affects Old World's operations beyond Colorado. Old World negotiates pricing and terms with each customer, and a national account purchases at the price negotiated with that account for all its locations regardless of state. Old World cannot practically carve out a Colorado-specific price for the same SKU sold to the same customer. Any fee assessed for Colorado is absorbed into the price negotiated with each customer and borne by that customer's locations in every state, including states with no EPR program. The compliance processes described above, and any systems build that follows, must likewise be constructed for a national business rather than a Colorado business: the same SKU classification, packaging component data, customer outreach, and sell-through tracking must be performed across Old World's entire customer base in order to isolate the Colorado portion. The same personnel who handle Colorado's program must at the same time handle the differing producer definitions, material categories, fee schedules, and eco-modulation criteria of every other state program, with no ability to build one process that satisfies all of them. Distributors located outside Colorado that resell into the state, and distributors inside Colorado that resell outside it, compound the problem.

22. All of the harms described above are further amplified because Old World understands that Colorado interprets their EPR program to require Old World to report and pay fees to both CAA and Interchange 360. The division between the two entities is not based on brand or on business line but on product and packaging component, so that a single unit of diesel exhaust fluid generates reporting obligations to two separate private organizations, each with its own agreement, portal, data format, fee schedule, and deadlines. Old World must maintain two

complete compliance processes, reconcile them against each other with no coordination between the entities. The division is also not based on any characteristic of the products. LPMA holds itself out as the program for petroleum and petroleum-related products, and the stated rationale for a separate program is that containers for oil and similar products are contaminated with petroleum residue and cannot be recycled through ordinary curbside collection. Diesel exhaust fluid and windshield wash, however, are not petroleum-related but nonetheless supposedly regulated by LPMA. Instead, Diesel Exhaust Fluid is a solution of urea in deionized water. Windshield washer fluid is a solution of methanol in water. Neither contains petroleum, and an empty container of either is clean high-density polyethylene indistinguishable from any other household plastic bottle. LPMA nonetheless includes both products on its Applicable Products List, which LPMA's Board of Directors sets unilaterally, on the sole stated basis that their containers are often commingled with oil and antifreeze containers at collection sites, for which there is no evidence or basis. The effect is that Old World's highest-volume product, which has no petroleum content and presents no special recycling problem, is assessed LPMA's flat fee of $0.56 per gallon rather than CAA's weight-based fee for the same plastic container. Per the LPMA Agreement, Old World is afforded no stated process in which to contest that designation.

23. Old World is not aware of any method to appeal fees or receive refunds for fees unlawfully or otherwise inappropriately assessed to the company by Colorado, CAA, or Interchange 360. No such method has been published by any of these entities.

**Verification and Signature**

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Docusign Envelope ID: 2850037B-9F43-8399-82CB-431919A6817C

Executed on this 10/13/2026 | 1:58 PM EDT day of October, 2026.

Signed by:
Warren Morrow
20900BC0D5934ED

**Warren Morrow**
Chief Operating Officer
Old World Industries, LLC