Docusign Envelope ID: F6016B2B-BCAD-82EC-821B-03D9BF7E6C3D

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,<br><br>Plaintiff,<br><br>AUTO CARE ASSOCIATION,<br><br>Proposed-Intervenor Plaintiff,<br><br>v.<br><br>JILL HUNSAKER RYAN, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT, in her official capacity.<br><br>Defendant. | Case No. 1:26-cv03460<br><br>**DECLARATION OF FRED SNOW** |

**DECLARATION OF FRED SNOW IN SUPPORT OF MOTION TO INTERVENE**

I, Fred Snow, declare the following:

1. I am President and Chief Operating Officer at DMA Industries, LLC ("DMA"), a member of Auto Care Association. I submit this declaration in support of Auto Care Association's Motion to Intervene in the above-captioned matter. The following facts are within my own personal knowledge. If called upon as a witness, I could and would competently testify thereto.

## Background

2. DMA is a company incorporated and headquartered in South Carolina. The company is privately held. DMA operates nationally, including in Colorado. DMA operates approximately six facilities nationwide. DMA employs over 250 people.

Docusign Envelope ID: F6016B2B-BCAD-82EC-821B-03D9BF7E6C3D

3. DMA manufactures several products for the automotive aftermarket including suspension components like strut assemblies and shock absorbers, lift supports, brake wear sensors, fuel pumps, and components. DMA sells these products to retailers.

4. DMA relies on cross-state supply chains to produce and sell goods, including suppliers and retailers potentially subject to regulation by Colorado's EPR program.

5. DMA does not control packaging decisions for the private label products it sells.

6. DMA continues to review packaging specs for improvement. DMA regularly reviews and transitions any plastic components that can be moved to alternative materials.

7. DMA became a member of the Auto Care Association in 2008 and has representation on the Board of Directors.

**Participation in Colorado EPR**

8. DMA understands that Colorado interprets DMA and a majority its customers to be "producers" for purposes of their EPR program.

9. As a producer under Colorado's EPR program, DMA understands Colorado's interpretation to be that DMA must register with and submit fees to Circular Action Alliance ("CAA").

10. DMA registered, enrolled, reported, and otherwise participated in the Colorado EPR program including enrollment with CAA.

11. Determining whether certain products contain covered materials, whether DMA qualifies as an obligated producer of those materials under Colorado's EPR program, and what portions of which packaging DMA must report to CAA is difficult because (i) DMA manufactures a product mix that includes private-label, licensed products, and own brand products; (ii) DMA manufactures some products that are interpreted to fall within the purview of CAA, and some that

Docusign Envelope ID: F6016B2B-BCAD-82EC-821B-03D9BF7E6C3D

are not covered materials under the law; and (iii) distribution occurs through complex supply chains subject to varied contractual arrangements.

**Compliance and Operational Burden**

12. DMA has expended substantial internal resources in efforts to comply with Colorado's EPR requirements. When DMA began its EPR compliance efforts, it had two employees dedicated to gathering the required packaging specifications, which took up at least 50% of their working time. Since then, DMA's internal processes have changed, which has increased the workload of DMA's product managers and also requires dedicated time from DMA's information-technology staff. In total, the time DMA dedicates to EPR efforts equates to at least one full-time salaried position. In addition, DMA had to develop a separate custom data table solely for EPR reporting.

13. The burden imposed by Colorado's EPR program is extensive for a single state. And this burden is magnified by the fact that DMA must comply with EPR programs in several other states with more programs coming online each month. Each state program has its own product classifications, producer definitions and obligations, and legal requirements. DMA is exempt from Oregon's program because its sales fall below Oregon's threshold, but DMA understands Colorado's position to be that DMA is subject to Colorado's program despite a similar product portfolio.

**Fee Impacts**

14. DMA filed a report in Colorado with CAA in 2026. This report contained data for 2025. CAA sent an invoice to DMA for approximately $1,911.80. DMA paid the invoice.

Docusign Envelope ID: F6016B2B-BCAD-82EC-821B-03D9BF7E6C3D

15. These fees are set based on past data, using fee methodologies that are not available to DMA, making it essentially impossible for DMA to predict future fees or modify future behavior to avoid future fees (which can be unilaterally increased at the discretion of CAA).

16. To sustain profitability on all products, DMA would have to pass Colorado EPR fees on to customers, including customers in states other than Colorado and customers in states with no EPR packaging programs.

17. DMA is concerned that its customers may seek to push EPR fees to DMA. This could make already thin profit margins even thinner or in some cases make products unprofitable.

**Costs Incurred as a Result of Colorado EPR**

18. DMA has incurred significant costs due to Colorado's EPR Program in terms of increased costs of products, compliance and monitoring.

**Overall Business Impact and Irreparable Harm**

19. Colorado's EPR Program affects DMA's ability to compete, serve customers, operate efficiently, make pricing decisions, and freely participate in markets.

20. The impacts of Colorado's program are felt outside of Colorado. DMA is a South Carolina company with customers in several states. DMA has expended and will continue to expend resources in South Carolina and other states that would not happen but for Colorado's EPR program.

21. DMA is not aware of any method to appeal fees or receive refunds for fees unlawfully or otherwise inappropriately assessed to DMA by Colorado or CAA.

**Verification and Signature**

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Docusign Envelope ID: F6016B2B-BCAD-82EC-821B-03D9BF7E6C3D

Executed on this 15.00 day of October, 2026.

Signed by:
AF462268162E401

**Fred Snow**
President and Chief Operating Officer
DMA Industries, LLC