# ATTACHMENT D

LPMA
powered by
Interchange 360

# LUBRICANTS PACKAGING MANAGEMENT ASSOCIATION

# Participation Agreement
*Colorado*

JULY 15, 2025

1. **Interpretation**

1.1 In this Agreement, unless the context otherwise requires:

(a) "**Act**" means the Colorado "Producer Responsibility Program for Statewide Recycling Act" (ss.25-17-701 though 25-17-176, C.R.S.), as may be amended from time to time.

(b) "**Agreement**" means this Participation Agreement.

(c) "**Brand**" means any mark, word, name, symbol, design, device or graphical element, or a combination thereof, including a registered or unregistered trademark, that identifies a Product and distinguishes the Product from other products.

(d) "**Business Day**" means any day other than a Saturday, Sunday, State of Colorado holidays or federal legal holidays.

(e) "**Consumer**" means any Person who receives Program Materials in connection with a Product the State and is located at a location in the State as identified in the Plan.

(f) "**Internet Transaction**" is defined in section 6.1(b).

(g) "**LPMA**" means the Lubricants Packaging Management Association.

(h) "**Notice**" is defined in section 7.1.

(i) "**Packaging Material**" means any material, regardless of recyclability, that is intended for single or short-term use and is used for the containment, protection, handling, or delivery of Products to the Consumer at the point-of-sale, including through an Internet Transaction. "Packaging Material" includes paper, plastic, glass, metal, cartons, flexible foam, rigid packaging, or other materials or combination of these materials. "Packaging Material" does not include:

(i) Packaging Materials used solely in transportation or distribution to non-Consumers;

(ii) Packaging Materials for Products used solely in business-to-business transactions where a Product is not intended to be distributed to the end Consumer; and

(iii) Packaging Materials that are used for Products sold or distributed outside the State; or any statutorily-exempt materials listed in section 18.3.2 of the Regulation.

(j) "**Participant**" means the undersigned Producer who is a participant in the Program pursuant to this Agreement.

(k) "**Person**" means any individual, public or private corporation, partnership, association, firm, trust or estate, franchisee or franchisor; or any other legal entity whatsoever which is recognized by law as the subject of rights and duties.

(l) "**Plan**" means the plan for the operation and administration of the Program, as may be amended from time to time.

(m) "**Producer**" means, in relation to a Person:

(i) (1) if the Product is sold or distributed in the State under the manufacturer's own Brand or is sold or distributed in the State using Program Materials that lack identification of a Brand, the Person that manufactures the Product;

(2) if the Product is manufactured by a Person other than the Brand owner, the Person that is the licensee of a Brand or trademark under which a packaged Product is sold or distributed in the State, whether or not the trademark is registered in the State; or

(3) if there is no Person described in sections 1.1(m)(i)(1) or 1.1(m)(i)(2), within the United States, the Person that imports the Product using Program Materials into the United States for use in a commercial enterprise that sells or distributes the Product in the State;

(ii) for the purposes of Products that are sold or distributed in the State through an Internet Transaction:

(1) the Producer of the Program Material used to directly protect or contain the Product; and

(2) for the purposes of Program Material used to ship a Product to a Consumer, the Person that packages or ships the Product to the Consumer.

"Producer" does not include any category of producer exempt from the requirements of the Act pursuant to section 713 of the Act, including, but not limited to:

(iii) Entities that meet the small business dollar limitation criteria established under Section 1.8.2 of the "Solid Waste Regulations" (6 CCR 1007-2, Part 1);

(iv) A Person that has used less than one ton of Program Materials for Products sold or distributed within or into the State during the prior calendar year;

(v) The State or a local government (as defined in the Regulation);

(vi) A nonprofit organization; and

(vii) An agricultural employer, as defined in the "Labour Peace Act", section 8-3-104 (1), C.R.S. (2024), regardless of where the agricultural employer is located, with less than five million dollars in realized gross total revenue in the State from Consumer sales of agricultural products sold under the Brand name of the farmer, egg producer, grower, or individual grower cooperative.

(n) "**Producer Responsibility Dues**" means any producer responsibility dues payable by a Participant in respect of Program Materials in the amounts set out in the LPMA Fees/Dues Schedule, as posted on the LPMA website, as determined from time to time by the LPMA's Board of Directors.

(o) "**Product**" means an economic good that is distributed, marketed or sold to a Consumer. "Product" includes such materials sold in bulk for use at a later time in containing, protecting, delivering, or presenting items.

(p) "**Program**" means the producer responsibility program respecting Program Materials operated and administered in the State in accordance with the Plan.

(q) "**Program Material**" means a Packaging Material used in respect of the Products identified in the LPMA Applicable Products List as posted on the LPMA website, as determined from time to time by the LPMA's Board of Directors.

(r) "**Proprietary Information**" is defined in section 4.1.

(s) "**Regulation**" means the "Producer Responsibility Regulations" (6 CCR 1007-2, Part 1, Section 18), as may be amended from time to time.

(t) "**Rules**" means any of the LPMA's and/or a Subsidiary's plans, policies, procedures, fees/dues schedules, bylaws, or other terms or conditions governing the Plan, the Program or the Participant, as each may be amended from time to time by the LPMA's Board of Directors, setting out the terms and conditions of the Program.

(u) "**State**" means the State of Colorado.

(v) "**Subsidiary**" means any corporation or other unincorporated entity of which LPMA possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of that corporation or unincorporated entity, whether through ownership of voting securities; membership in an unincorporated entity; the power to appoint or remove members of such corporation or unincorporated entity's board of directors; by contract or otherwise.

1.2 Words importing the singular gender include the plural and vice versa; words importing gender include the masculine, feminine and neuter gender; words importing Persons include individuals, bodies corporate, partnerships, and unincorporated organizations.

2. **Terms of Participation**

2.1 The Participant acknowledges that it is a Producer and is hereby permitted to participate in the Program pursuant to this Agreement in accordance with the Plan.

2.2 The Participant in consideration of being permitted to become a Participant in the Program, hereby agrees:

(a) To comply with this Agreement, the Plan and any Rules applicable to the Program;

(b) To pay to the LPMA any Producer Responsibility Dues set out on the Fees/Dues Schedule for each Program Material in respect of which the Participant is a Producer. Producer Responsibility Dues include the dues for planning and implementation of the Program and notwithstanding the date the Participant accepts this Agreement for participation in the Program, such dues shall be payable from the respective effective date for each set out on the Fees/Dues Schedule; and

(c) To comply provide information to the LPMA in accordance with section 5;

(d) That the LPMA has the authority to make Rules, policies or procedures in relation to the Plan, the Program, and any Products or Program Materials. The Participant agrees to be bound by any applicable Rules, policies or procedures applicable to it and made by LPMA so long as such Rules, policies, or procedures comply with applicable state and/or federal law. This Agreement and/or LPMA's Rules may be amended from time to time by the LPMA's Board of Directors.

2.3 The Participant shall not charge any kind of point-of-sale or point-of-collection fee to Consumers in respect of Program Materials.

3. <u>**Term and Termination**</u>

3.1 **Term.** Participant agrees that upon the Participant's delivery to the LPMA of a copy of this Agreement executed by an authorized signing officer of the Participant, the term of this Agreement and the Participant's participation in the Program will commence on the Participant's receipt of written confirmation from the LPMA that the Participant has been approved, at the LPMA's sole discretion, to participate in the Program, and will continue thereafter for a period of 1 year. Thereafter, this Agreement and the obligations flowing therefrom shall automatically renew for successive 1-year terms on the anniversary date of the approval of the Participant's participation in the Program, unless the Participant gives written Notice of termination to the LPMA at least 60 days prior to the end of the then current term.

3.2 **Termination.**

(a) Where the Participant has given written Notice of its intention to terminate this Agreement in accordance with the notice period above, this Agreement shall terminate at the end of the then current term.

(b) The LPMA may terminate this Agreement immediately by written Notice to the Participant:

(i) if the Participant ceases to carry on business; or

(ii) if the Participant fails to comply with the LPMA's Rules and terms of this Agreement and such failure remains after 30 days of from the delivery of a Notice of non-compliance to the Participant by the LPMA.

4. <u>**Confidentiality**</u>

4.1 "**Proprietary Information**" means information that, if made public would divulge competitive business information or trade secrets of the entity that developed the information; or would reasonably hinder the entity's competitive advantage in the market. The term "trade secret" as used in this definition has the same meaning as in section 7-74-102(4), C.R.S.

4.2 The LPMA shall:

(a) Keep confidential any properly identified Proprietary Information provided by the Participant; and

(b) Exclude from release to the public or any unauthorized entity any properly identified Proprietary Information provided by the Participant to the LPMA in the Plan.

4.3 **Burden to demonstrate information is proprietary.** The Participant submitting the information to the LPMA: (a) has the burden to identify and demonstrate the submitted information is Proprietary Information at the time of submission; and (b) must describe with particularity which information it considers Proprietary Information and why. If part of a document is Proprietary Information and part is not, the Participant must submit two copies of the document, one unredacted and marked confidential and one

redacted. The LPMA need only protect or withhold Proprietary Information clearly and properly identified at the time of submission.

5. **Recordkeeping, Production of Records, and Audits**

5.1 **Duty to preserve and maintain records**. The Producer must preserve all books and records in accordance with State and federal laws. The Producer must maintain all documents and records necessary to determine compliance with the Program for a period of 5 years. Such records must be open to inspection by the LPMA at any time.

5.2 **Duty to produce records.** If requested by the LPMA the Producer must submit documents and records to the LPMA within 10 Business Days. The Producer must submit documents and records related to the calculation and payment of Producer Responsibility Dues, recycling rates, collection rates, post consumer-recycled-content rates (as such terms are defined in the Regulation), and any other materials necessary for to determine compliance with the Program to the LPMA within 10 Business Days.

5.3 **Material Audits.** The Producer agrees that the LPMA may, from time to time, audit the records of the Producer, through the use of a firm of chartered accountants with respect to the sale and/or supply of Program Materials. Audits may include random bale tracking to verify chain of custody of materials. Audits must demonstrate and certify that the end markets meet the standards of "responsible" as defined by the Producer Responsibility Act. The LPMA must indicate what information is requested to be deemed confidential.

6. **Order of Producer Obligation**

6.1 Responsibility of a Producer to pay Producer Responsibility Dues in respect of Program Materials in respect of a Product first sold or distributed in the State, in the following order of precedence (except for section 6.1(c)):

(a) *Producers of Products Using Packaging Materials*

(i) The Brand owner of the Product directing or performing the manufacturing of the Program Material used for the Product;

(ii) If section 6.1(a)(i) does not apply, then the Brand or trademark licensee of the Product directing the manufacturing of the Packaging Material used for the Product;

(iii) If there is no identified Brand on the Packaging Materials and neither sections 6.1(a)(i) nor 6.1(a)(ii) applies, then the manufacturer of the Product using Program Materials; or

(iv) If sections 6.1(a)(i) through 6.1(a)(iii) do not apply, then the importer into the United States of the Product using Program Materials.

(b) *Producers of Packaging Materials Used in Internet Transactions*

"**Internet Transactions**" involve two obligated Producers, both who are equally obligated:

(i) Producers of Packaging Material used to protect or contain the Product (follow determination in section 6.1(a)); and

(ii) Producers of Packaging Material used to ship the Product to the Consumer (follow determination in section 6.1(a)).

(c) *Producers of Any Other Program Materials*

For any other Producers of Program Materials not obligated in sections 6.1(a) through 6.1(b) the Producer is the Person that first distributes the material in or into the State. If a Product has two or more items that are associated with different Brands and are marketed in a single package, the Producer is the Brand who is contracting the manufacturing of the Product using Packaging Materials following the order of obligation in section 6.1(a). Where the Producer is a business operated wholly or in part as a franchise, the Producer is the franchisor, if that franchisor has franchisees that operate in Colorado.

7. <u>**General**</u>

7.1 **Notice.** All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each a "**Notice**") shall be in writing and is deemed to have been given:

(a) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);

(b) on the date sent by e-mail if sent during normal business hours of the recipient, and on the next Business Day is any day that if sent after normal business hours of the recipient; or

(c) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

7.2 Notices shall be delivered to a party at the address for Notice it designates from time to time by Notice delivered to the other Party or, if a party has not designated an address for Notice, to last known registered office address on the public records for such party.

7.3 **Assignment.** In order to facilitate the management and administration of the Program, or as may otherwise be required for compliance with local or state-level laws, LPMA reserves the right to: assign any of its rights arising under this Agreement, any Plans or Rules, in whole or in part, to a Subsidiary, including, but not limited to, the creation, management and administration of any Plan or Rule or the collection of any dues, or other amounts owing by the Participant to LPMA, subject to thirty (30) days advance written Notice of the assignment to the Participant. The Participant agrees to be bound by and comply with any such Plans or Rules, or parts of them, that are created, managed administered, delegated to, or otherwise carried out by a Subsidiary.

7.4 **Severability**.

(a) If any provision of this Agreement (or part of any provision) is or becomes illegal, invalid or unenforceable, the legality, validity and enforceability of any other provision of this Agreement shall not be affected.

(b) If any provision of this Agreement (or part of any provision) is or becomes illegal, invalid or unenforceable but would be legal, valid and enforceable if some part of it was deleted or modified, the provision or part-provision in question shall apply with such deletions or modifications as may be necessary to make the provision legal, valid and enforceable. In the event of such deletion, the parties shall negotiate in good faith in order to agree the terms of a mutually acceptable alternative provision in place of the provision so deleted.

7.5 **No assignment by Participant.** The Producer shall not assign or otherwise transfer this Agreement without the prior written consent of the LPMA.

7.6 **No partnership.** Nothing in this Agreement is intended to, or shall be deemed to, establish any partnership or joint venture between any of the parties.

7.7 **No waiver.** No waiver under this Agreement is effective unless it is in writing, identified as a waiver to this Agreement and signed by the party waiving its right. Any waiver authorized on one occasion is effective only in that instance and only for the purpose stated, and does not operate as a waiver on any future occasion.

7.8 **Counterparts.** Transmission of an executed copy of this Agreement by email (in PDF) or other electronic or digital transmission (including by transmission over an electronic signature platform acceptable to the LPMA such as DocuSign or the equivalent thereof) shall take effect as the transmission of an executed by handwritten signature of this Agreement.

By executing the Agreement where indicated below, the Participant agrees to be bound by the terms and conditions of this Agreement.

**Participant name:**

______________________________________
(print full registered company name above)

Per: __________________________________
Authorized Signatory
Name: _____________________________
Title: ______________________________