**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,<br>Plaintiff,<br><br>v.<br><br>JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public Health & Environment, in her official capacity,<br>Defendant. | **Civil Action No. 1:26-cv-03460-PAB-NRN** |

**NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS'**
**RESPONSE TO DEFENDANT'S MOTION TO DISMISS DUE PROCESS CLAIMS**

## Introduction and Summary

The Complaint alleges that Colorado handed the power to regulate more than 3,000 companies to a private organization controlled by competitors of the companies it regulates. Colorado did not retain meaningful control over that organization. ECF No. 1 ("Compl.") ¶¶ 3, 50–51, 67, 120–22. Counts I and II allege that this arrangement violates the Fourteenth Amendment's Due Process Clause. Defendant Jill Hunsaker Ryan ("Ryan"), Executive Director of the Colorado Department of Public Health & Environment ("CDPHE"), has moved to dismiss those counts. ECF No. 20 ("Mot."). But her arguments either ignore or dispute the Complaint's allegations, and neither kind of argument is permissible on a motion to dismiss. The Court should deny the motion.

The Complaint challenges the Producer Responsibility Program for Statewide Recycling Act, Colo. Rev. Stat. §§ 25-17-701 to -716 (the "Act"). The Act creates a statewide system to recycle consumer-product packaging, and requires certain companies in the supply chain, called

"producers," to fund it. These producers include many members of Plaintiff National Association of Wholesaler-Distributors ("NAW"), a national trade association whose members distribute packaged consumer goods across the national supply chain.

The Act violates due process of law because it delegates authority to administer this system to a private entity, Circular Action Alliance ("CAA"). The Act establishes only vague guidelines to govern CAA. The Complaint details the extensive authority that CAA exercises. Among other things, CAA sets the fees that producers must pay and bars those producers from challenging its actions in court.

Count I asserts that this delegation violates the Supreme Court's longstanding prohibition against such sweeping delegations of regulatory authority to self-interested private actors. *Eubank v. City of Richmond*, 226 U.S. 137, 143 (1912); *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 122 (1928); *see also Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936). Ryan asserts that Count I fails to state a claim because, she contends, the Complaint does not identify the property and liberty interests at stake. This argument fails because the Complaint alleges concrete facts identifying both those interests. Ryan also contests the allegation that the Act provides insufficient control over CAA. She cites CAA's "program plan," which the Complaint discusses, but she identifies nothing in that plan that contradicts the Complaint's allegations.

Count II alleges that the Act further violates the Due Process Clause by imposing unconstitutional conditions. As the Complaint alleges, the Act permits producers access to the Colorado market if and only if they submit to regulation by CAA, waive their right to challenge CAA in federal court, and pay fees that far exceed the cost to CAA of recycling the waste from their products.

Ryan challenges Count II by contending that membership in CAA is voluntary. But the Complaint alleges that membership is compelled, and the Court must accept that allegation as true. Ryan also disputes the allegation that CAA bars producers from access to the courts. But she cites a CAA "agreement" that confirms the Complaint's allegations.

Ryan compounds the errors in these arguments by repeatedly citing a recent decision addressing an Oregon recycling statute, *Nat'l Ass'n of Wholesaler-Distributors v. Feldon*, No. 3:25-CV-1334-SI, 2026 WL 2532218 (D. Or. Aug. 27, 2026), appeal filed (9th Cir. Sept. 30, 2026). But that decision is inapposite because the Oregon statute differs from the Act in respects critical to Ryan's motion. For example, the Oregon statute permits multiple private entities or "producer responsibility organizations" ("PROs") to administer the recycling system, while the Act permits only one (until at least 2029), to which all Colorado producers must submit. *Feldon* does not help Ryan, and she fails to identify any element of Counts I or II that is not properly pleaded. Her motion should be denied.

**The Allegations of the Complaint**

Plaintiff NAW is a national trade association that represents the wholesale distribution industry. Its members distribute consumer products across the national supply chain, some handling millions of different kinds of products. Compl. ¶¶ 21, 95. Many of its members are subject to the Act, which creates a statewide recycling system for consumer product packaging. *Id.* ¶¶ 2, 18, 21–22, 33. The Act funds the system by charging fees to certain companies in the supply chain for consumer products sold in Colorado. *Id.* ¶¶ 1–3, 30–36. It calls those companies "producers." *Id.* ¶ 2.

The Act delegates authority to administer this program to a private PRO. *Id.* ¶¶ 3, 43–46. Producers must register with the PRO as a condition of access to the Colorado market, *id.* ¶¶ 3,

14, 44, 65, 140–41, and must pay it mandatory fees the Act calls "dues," *id.* ¶ 5.

The Act provides producers a nominal alternative to joining the PRO. It states that any producer can propose an "individual program plan" or "IPP," which must separately collect and recycle the waste from that producer's products sold in Colorado. *Id.* ¶ 47 (citing Colo. Rev. Stat. § 25-17-705(8)(a)). But this IPP option is illusory for most producers. *Id*. It is cost prohibitive unless a producer's products are limited to a narrow category. *Id.* ¶¶ 47, 143. Although more than 3,000 companies have registered as producers, *id.* ¶ 67, there is only one IPP, and it handles the single product category of containers for automotive lubricants, *id.* ¶ 47.

CDPHE has designated CAA as the sole PRO. *Id.* ¶¶ 4, 48. The Complaint alleges that CAA is controlled by about two dozen companies, some or all of which are themselves producers under the Act. *Id.* ¶¶ 50–51, 120–22.

The Complaint alleges that the Act subjects CAA only to vague statutory guidelines and no meaningful agency oversight. *Id.* ¶¶ 3, 68, 71, 128–29. The Act's principal check on CAA is a requirement that it obtain CDPHE approval of its program plan. *Id.* ¶¶ 55, 60–61. CDPHE approved CAA's plan in December 2025. *Id.* ¶¶ 55–56, 59–61.

But the Act limits CDPHE's review to whether the proposed plan complies with the Act. *Id.* ¶ 57. And while the Act requires the plan to address topics such as how CAA will establish a statewide system to collect and recycle waste, *id.* ¶¶ 61–63, 129, it does not require the plan to commit the PRO to a budget or identify the dues the PRO will charge, *id.* ¶¶ 61, 73–74. The Act leaves CAA similarly broad authority in other areas. The plan does not, for instance, authorize CDPHE to select or remove members of the CAA Board or to approve CAA's budget. *Id.* ¶¶ 52–53, 68.

The Act also permits CAA to set the "dues" that producers must pay. The Act provides

vague guidelines for the amount, *id.* ¶¶ 5, 70, stating only that dues must vary by type of covered material and relate to the net cost of recycling the material, *id.* ¶¶ 70–71. It does not subject CAA's dues to CDPHE approval. *Id.* ¶¶ 76–77, 130. CAA charges producers dues that exceed the cost of recycling their waste; the dues also fund statewide public education about recycling and they pay to recycle waste attributable to the large categories of producers the Act exempts from paying dues. *Id.* ¶¶ 42, 61, 63, 75, 142.

The Act also permits CAA to impose other terms and conditions. *Id.* ¶¶ 65–66, 119. CAA has used that broad authority to force producers to accept the extensive terms in its "Participant Producer Agreement" ("Agreement") and "Colorado Addendum" ("Addendum"). *Id.* ¶ 65. These terms require producers to arbitrate virtually every dispute with CAA, including disputes over CAA's dues amounts and even over CAA's decision to terminate a producer from the program. *Id.* ¶¶ 79–80, 131, 140. (There is one minor exception to this arbitration requirement. A regulation permits producers to challenge "eco-modulation" fee adjustments administratively, but those adjustments cannot exceed 10% of base dues. *Id.* ¶¶ 81, 83).

The Complaint includes five claims. Counts I and II raise the due process of law claims described above. Count III alleges that the Act violates the Dormant Commerce Clause by discriminating against interstate commerce and by imposing burdens on interstate commerce that outweigh any benefits. Count IV alleges that the Act violates the First Amendment by forbidding producers from itemizing the cost of the Act's "extended producer responsibility" program on consumer invoices. Count V alleges that the Act further violates the First Amendment by compelling producers to join CAA and fund its advocacy.

## Standard of Review

A complaint is sufficient if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint meets this plausibility standard if its well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 663; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). A court need not accept conclusory allegations, *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994), but "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citations omitted).

## Argument

### I. Count I States a Claim that the Act Violates Due Process by Delegating Regulatory Power to a Self-Interested, Insufficiently Controlled Private Party

#### A. DISPUTED: The Complaint Identifies Constitutionally Protected Property and Liberty Interests[1]

Count I raises a claim under the Fourteenth Amendment's Due Process Clause, which prohibits legislatures from delegating regulatory authority to self-interested private entities without meaningful governmental control. *See Eubank*, 226 U.S. at 143; *Roberge*, 278 U.S. at 122; *see also Carter Coal Co.*, 298 U.S. at 311 (stating that "[t]he delegation is . . . clearly . . . a denial of rights safeguarded by the due process clause of the Fifth Amendment"); *FCC v. Consumers' Research*, 606 U.S. 656, 692–93 (2025) ("'the statute involved 'delegation in its

[1] The Court's Civil Practice Standards require that "the movant . . . clearly enumerate each element that movant contends must be alleged, but was not," and that the respondent identify each such contention it disputes as "**DISPUTED.**" § III.F.2.a.i, ii (bold in original).

most obnoxious form' because it was made to 'private persons whose interests' are often 'adverse to the interests of others'") (quoting *Carter Coal*, 298 U.S. at 311); *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.* ("*Amtrak*"), 821 F.3d 19, 31–34 (D.C. Cir. 2016) (holding that due process of law bars giving a self-interested entity regulatory power over its competitors). Ryan's Response to NAW's Motion for a Preliminary Injunction cited *Consumers' Research* as authoritative on Count I. ECF No. 15 at 7; *see also id.* at 8.

The Complaint supports Count I by alleging that the Act grants CAA regulatory power over producers, Compl. ¶ 119; that CAA is self-interested, *id.* ¶¶ 120–27; that the Act does not establish meaningful control over CAA, *id.* ¶¶ 52–53, 57, 66–77, 128–30; and that CAA uses that power to deprive NAW's members of property and liberty without due process, *id.* ¶¶ 3, 78, 116, 127, 136.

Ryan does not challenge the legal principle underlying Count I but contends that the Complaint fails to identify protected property or liberty interests. Mot. at 7–9. Yet the Complaint alleges facts identifying both kinds of interests.

It identifies a protected property interest by alleging that the Act compels producers to pay "dues" to the PRO, thus depriving the producers "of property without due process of law." Compl. ¶ 136. These dues payments are property. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36 (1990) ("[E]xaction of a tax constitutes a deprivation of property."). *See also* Compl. ¶ 5 (the dues are "mandatory payments"); *id.* ¶ 18 (NAW's members are "forced to . . . pay fees under the Act"); *id.* ¶ 78 (the Act and regulations "compel producers to pay the dues that the private PRO demands").

The Complaint also identifies a liberty interest like the one in *Carter Coal*, where the Supreme Court held that a statute authorizing certain coal producers to set wages and hours for

the entire industry interfered "with personal liberty and private property." 298 U.S. at 311. The D.C. Circuit likewise held that authorizing Amtrak to help set standards for its freight-railroad competitors burdened the competitors' liberty. *Amtrak*, 821 F.3d at 31, 34. Here, the Complaint alleges that the Act burdens the same interests by forcing producers to join the PRO "on the PRO's non-negotiable terms, before their products may be sold in Colorado," Compl. ¶ 3, as a "condition of selling to customers in the state," *id.* ¶ 140. *See also id.* ¶ 127 (the Act authorizes the PRO to regulate the terms on which producers do business). These allegations more than suffice, since "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

Ryan cites *Feldon* in support of this argument but misreads the opinion. *Feldon* did not even consider the question at issue here, which is whether a state's recycling statute burdens the property and liberty interests protected in *Carter Coal*. Rather, the court addressed whether Oregon's Recycling Modernization Act ("RMA") *created* a property or liberty interest, concluding that "there is no *statutory* basis for finding a threatened property or liberty interest *in the RMA*." 2026 WL 2532218, at *25 (emphasis added). Ryan ends her quotation of this statement before the words "in the RMA" and substitutes the paraphrase "in the law." Mot. at 4. In fact, *Feldon* supports Count I in this case because when the court did discuss CAA dues, it acknowledged that "actual ownership of money is a core property interest." 2026 WL 2532218, at *25. It then "assume[d] without deciding that NAW had satisfied the threshold requirement of showing a protected property interest." *Id.*

### B. DISPUTED: The Complaint Sufficiently Pleads that the Act Fails to Establish Sufficient Governmental Control over CAA

Ryan next challenges the allegations that the Act provides insufficient governmental control over CAA. She contends these allegations are contradicted by the CAA program plan,

which refers to various working sessions and meetings that took place before CDPHE approved the plan. Mot. at 8. Ryan's argument fails for two reasons.

First, the plan paragraph Ryan cites does not contradict the Complaint. The paragraph is from the plan's "Public Input" section, which describes consultations by *Circular Alliance Colorado LLC* ("CAA Colorado") with public groups and other "interested parties." ECF No. 1-1 at 43. CAA Colorado is a subsidiary of CAA. *Id.* at 40. Read in full, the paragraph states that CAA Colorado "kept" the CDPHE advisory board "up to date on the next steps in the EPR process and the engagement schedule with the different interested parties." *Id.* at 45. The paragraph then refers to "advisory board and work group sessions" participated in *by CAA Colorado*. *Id.* This discussion of CAA Colorado's activities, which included meetings with the CDPHE advisory board, is entirely consistent with the Complaint. These meetings do not contradict its allegations that the Act failed to establish meaningful control over CAA. And the Complaint specifically states that a CDPHE "advisory board" participated in CDPHE's review of the proposed plan, also pointing out that the advisory board's "role is limited to making recommendations to the executive director of CDPHE." Compl. ¶ 58.

Second, the CAA Colorado meetings Ryan cites do not show the kind of agency control the Supreme Court looked for in *Consumers' Research*. Those meetings have little bearing on the considerations the Supreme Court weighed to determine whether the relevant agency had sufficient authority over a private entity. *See* 606 U.S. at 692–93. The Court's key considerations were whether the agency appointed the private entity's board of directors, approved its budget, and had final say on the fees it charged the regulated companies, and whether those regulated companies could challenge the private entity's decisions *de novo* before the agency. *Id.* Here, every one of those considerations shows that CDPHE *lacks* the requisite authority over CAA.

*See* Compl. ¶¶ 52–53 (board), 68 (budget), 76–77, 130 (dues), 131 (no administrative appeal or judicial review of base dues). *See also* discussion of *Consumers' Research* at ECF No. 17 (Reply of NAW in Supp. of Mot. for Prelim. Inj.) at 4–5.

### C. DISPUTED: As Explained Below in Section II.A, the Complaint Sufficiently Pleads that Membership in CAA Is Not Voluntary

Ryan's last argument against Count I is that producers' relationship with CAA is voluntary. Ryan contends that "even if" the Complaint had identified protected property and liberty interests, Count I would fail because NAW members caused any harm to themselves by choosing to join CAA. Mot. at 9–10. Ryan notes this voluntariness argument as a fallback to Count I, then develops it in her challenge to Count II. This Response explains below, in Section II.A, that this argument fails with respect to both counts because CAA membership is *not* voluntary.

## II. DISPUTED: Count II States a Claim that the Act Violates Due Process of Law by Conditioning Access to the Colorado Market on Submitting to Regulation by CAA

### A. DISPUTED: The Complaint Sufficiently Pleads that Membership in CAA Is Not Voluntary

Count II alleges that the Act violates the unconstitutional conditions doctrine, which bars the government from conditioning a benefit on the surrender of constitutional rights. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604–07 (2013). Selling lawful goods in interstate commerce is "not a special governmental benefit that the Government may hold hostage, to be ransomed by the waiver of constitutional protection." *Horne v. Dep't of Agric.*, 576 U.S. 351, 366 (2015). The Complaint pleads a violation of this doctrine by alleging that Colorado conditions producers' ability to sell goods on three requirements: that the producers submit to regulation by a self-interested private party, waive a federal judicial forum, and pay

fees lacking rough proportionality to the cost of recycling their waste. Compl. ¶¶ 47, 65, 79–80, 139–44.

Ryan challenges Count II by returning to her voluntariness argument. She contends that producers have *two* alternatives to joining CAA. Mot. at 11.[2] Neither alternative defeats the Complaint's allegation that NAW's producer members must join CAA. Compl. ¶¶ 3–4, 13–14, 44, 46–49, 65, 119, 127, 140–43, 181.

The first putative alternative is for each producer to request an "exemption by rule of specific packaging." Mot. at 11. Ryan cites a statutory provision authorizing CDPHE to "determine[] by rule" that a specific packaging "material" is exempt from the Act. Colo. Rev. Stat. § 25-17-703(13)(b)(XV). This is a catchall provision, the last on a list of 15 categories of materials excluded from the Act. Ryan says nothing about how this provision could exempt a producer from the need to join CAA. As the Complaint alleges, the program plan lists 61 materials categories that are not exempt. Compl. ¶ 74. It also alleges that "[m]any distributors" who are NAW members "handle hundreds of thousands or even millions of different products." *Id.* ¶ 95.

Ryan does not say how a producer could obtain an exemption for every kind of packaging material used in every one of its products. She offers no reason to believe that CDPHE would grant significant exemptions, if any, since doing so would nullify the basic requirement to join a PRO to fund the recycling system. Ryan's argument rests on speculation that CDPHE *might* exempt enough materials to allow NAW members to escape the statute's obligations. This kind

[2] Ryan cites *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996), to argue that due process of law requires "deliberateness in directing the misconduct toward the plaintiff." Mot. at 10. The Court need not reach that argument, because *Seamons* did not involve compulsion. The parents in that case chose to transfer their child to another school.

of extreme speculation is impermissible in a motion to dismiss.

Ryan's second proposed alternative fares no better. Ryan disputes the Complaint's allegation that the IPP option stated in the Act is "cost prohibitive and therefore illusory." *Id.* ¶ 47. But the Court must accept the Complaint's allegations as true and construe them in NAW's favor. *Iqbal*, 556 U.S. at 678. And Ryan does not dispute the allegations that an IPP must meet the same extensive requirements as the sole authorized PRO, including, for example, the requirement to provide for statewide collection and processing of all materials attributed to the producer. Compl. ¶ 47. Nor does Ryan dispute that, although more than 3,000 companies have registered as producers, *id.* ¶ 67, there is only one IPP, and it handles the single product category of packaging for automotive lubricants, *id.* ¶ 47. Nor does she dispute that some of those producers handle thousands and even millions of different kinds of products. *Id.* ¶ 95. These allegations easily support the inference that the IPP option is cost-prohibitive and illusory.

Ryan cites *Feldon* to support her IPP argument, but *Feldon* did not address an IPP, which is not mentioned in the Oregon recycling statute. Ryan relies on a bench remark that NAW "arguably could form their own PRO." ECF No. 20-1 at 97:2–14; *see also id.* at 72:21 (calling that possibility "a big 'if'"). That remark assumed a state that permits multiple PROs, but Colorado permits only one until at least 2029, as Ryan acknowledges. Compl. ¶¶ 46, 48; Mot. at 12. In any event, the remark was not a finding that membership in CAA was voluntary. ECF No. 20-1 at 97. *Feldon* is inapposite.[3]

---

[3] NAW, the plaintiff in *Feldon*, does not concede in that case that the availability of a second PRO would make submission to either PRO voluntary. NAW is challenging the *Feldon* decision on appeal. *See supra* at 3.

### B. DISPUTED: The Addendum's Carve-Out Does Not Defeat the Allegations that CAA Denies Producers Access to the Courts

Ryan next disputes the allegation that CAA denies producers access to judicial review. Mot. at 13. This argument fails for two reasons. First, even if Ryan could establish on a motion to dismiss that CAA permits producers to seek judicial review of its actions, Count II would still survive because denial of judicial review is only one of multiple bases for that Count. *See* Compl. ¶¶ 140–42.[4] *See United States v. Rocket Mortg., LLC*, 835 F. Supp. 3d 1173, 1178–79 (D. Colo. 2025) ("[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims"); *see also Brown v. JBS USA Food Co.*, 773 F. Supp. 3d 1193, 1236 n.21 (D. Colo. 2025) (Brimmer, J.) (recognizing this principle).

Second, the contract language she cites does not contradict the Complaint. Her argument misreads the Addendum, which is the document that contains the arbitration provision. (Addendum § 10 states that, if the Agreement and the Addendum conflict, the Addendum "will prevail and apply without exception[.]" ECF No. 20-3 § 10.) The Addendum sets out the arbitration requirement in broad terms: "*any dispute*, *controversy, or claim arising out of or relating to* this Colorado Addendum, including the *interpretation, scope, or breach* thereof or the extent of the Parties' obligations under the Colorado EPR Law, *shall be resolved by binding arbitration*." ECF No. 20-3 § 8 (emphasis added).

This same section then creates a narrow carve-out from that requirement: "Notwithstanding the foregoing, nothing in this Section 8 shall limit the ability of a Party *to seek injunctive relief from a court* of competent jurisdiction *ordering compliance* with the Agreement

---

[4] Ryan makes a related argument against Count I, which also rests in part on the allegation that CAA denies producers access to judicial review. She observes that the Complaint does not allege that the Act "create[d]" the right to judicial review. Mot. at 9. That observation is irrelevant, because Count I does not seek to enforce a right to review created by the Act.

or this Colorado Addendum or *enjoining and restraining the continuation of a breach* of the Agreement or this Colorado Addendum." *Id.* (emphasis added).

This sentence permits parties to seek judicial relief for two purposes. Both depend on an underlying arbitration decision resolving the parties' rights: first, to require a party to comply with the CAA Agreement, and second, to restrain a party from continuing to breach the Agreement. The carve-out does not authorize the remedies a producer would seek in most actions against CAA: declaratory relief, a refund of dues, or other damages. It does not, as Ryan suggests, swallow the entire arbitration requirement set out earlier in the same section. Indeed, the carve-out's effect is asymmetrical in favor of CAA, because it enables CAA to go to court to obtain injunctions to force producers' compliance with the Agreement. (Nor is the carve-out even ambiguous. If it were, the Court could not resolve the ambiguity on a motion to dismiss. *McAaliffe v. Vail Corp.*, 69 F.4th 1130, 1143 (10th Cir. 2023)).

Finally, Ryan invokes a regulation that permits producers to appeal "eco-modulation" fee adjustments to CDPHE, Mot. at 13–14, contending that producers therefore have not surrendered their access to the courts. But this is a limited, minor exception that Ryan acknowledges does not permit producers to challenge base dues. *Id.* at 14. As the Complaint explains, eco-modulation adjustments cannot exceed 10% of base dues. Compl. ¶ 83; *see also id.* ¶¶ 74, 81, 83–84. Ryan's "eco-modulation" argument does not contradict the Complaint's allegation that CAA denies producers critical access to judicial review.

**Conclusion**

For these reasons, the Court should deny the partial motion to dismiss.

DATED: November 3, 2026

Respectfully submitted,

*/s/ Andrew J. Morris*
Andrew J. Morris #DC411865
Jacob H. Huebert #IL6305339
andrew.morris@ncla.legal
jacob.huebert@ncla.legal
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
Attorneys for Plaintiff