**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03460-PAB-NRN

NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,
Plaintiff,

AUTO CARE ASSOCIATION,
Intervenor Plaintiff,
v.

JILL HUNSAKER RYAN, EXECUTIVE DIRECTOR OF
THE COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT,
in her official capacity,
Defendant.

---

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S DUE PROCESS CLAIMS (ECF No. 20)**

---

Defendant, Jill Hunsaker Ryan, the Executive Director of the Colorado Department of Public Health and Environment (CDPHE), acting in her official capacity (hereinafter, the Department), by and through Colorado Attorney General Philip Weiser and undersigned counsel, respectfully files this Reply in Support of its October 13, 2026 Motion to Dismiss Plaintiff's, the National Association of Wholesaler-Distributors (NAW), Due Process Claims (ECF No. 20) for failure to state a claim.

This Court should grant the Department's Motion to Dismiss for two reasons. First, NAW continues to fail to identify a protected property or liberty interest "stemming from a state law" in its Complaint as required for a private nondelegation due process claim under the Fourteenth Amendment. *Nat'l Ass'n of Wholesaler-Distributors v. Feldon*, No. 3:25-CV-1334-SI, 2026 WL 2532218, at *24 (D. Or. Aug. 27, 2026); *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972).

Second, NAW does not address the conflicts between its allegations and the approved Program Plan attached to its Complaint. Instead, NAW claims there is no conflict, a contention refuted by quick comparison. NAW also does not identify a protected right actually conditioned as a result of the Producer Responsibility Program (Program). Consequently, both of NAW's due process claims fail to state a claim.

## ARGUMENT

### I. NAW does not allege a protected property or liberty interest stemming from state law.

NAW fails to state a private nondelegation claim because it continues to ignore the fact that its claim arises under the Fourteenth Amendment. Consequently, NAW does not identify an alleged property or liberty interest stemming from state law and its arguments attempting to identify an interest after the fact do not suffice.

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Thus, as the Oregon Court found, "NAW must first show that it has a protected liberty or property interest before it may invoke the protections of the Fourteenth Amendment." *Feldon*, 2026 WL 2532218, at *24.

NAW starts its Response to the Motion to Dismiss with a string of relevant, but not entirely on point, federal cases on *congressional* nondelegation. ECF No. 31 at 6-7 (citing *Eubank v. City of Richmond*, 226 U.S. 137, 143 (1912); *State of Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 122 (1928); *Carter v. Carter Coal*

*Co.*, 298 U.S. 238, 311 (1936); *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656, 692–93 (2025); and *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.* ("*Amtrak*"), 821 F.3d 19, 31–34 (D.C. Cir. 2016)). Through these, NAW seems to argue that a delegation of power in and of itself is sufficient to state a claim. *Id.* (quoting *Carter Coal*, 298 U.S. at 311 for the proposition that "delegation is . . . clearly . . . a denial of rights safeguarded by the due process clause of the Fifth Amendment"). But, as the Oregon Court held in *Feldon*, this is not the correct inquiry for a private nondelegation claim under the Fourteenth Amendment.

> [U]nlike an improper *congressional* delegation, a private delegation under state law does not implicate *federal* separation-of-powers principles . . . . [B]ecause NAW challenges a state law under the Fourteenth Amendment, NAW must first show that it has a protected liberty or property interest before it may invoke the protections of the Fourteenth Amendment, either under a private nondelegation theory or under a *Mathews [v. Eldridge*, 424 U.S. 319, 334-35 (1976),] theory."

*Feldon,* 2026 WL 2532218, at *22-24 (emphases in original). Consequently, the question before this Court is not, as NAW contends, "whether a state's recycling statute burdens *the property and liberty interests protected in Carter Coal*." ECF No. 31 at 8 (emphasis added). Instead, it is whether Colorado's recycling statute impermissibly burdens the property and liberty interests *protected by state statute* and *alleged by NAW*. Because NAW does not allege a specific property or liberty interest stemming from state statute in its Complaint, its claim cannot survive.

NAW next points to miscellaneous allegations in its Complaint to attempt to demonstrate an alleged property interest. *Id.* at 7 (citing ECF No. 1 ¶¶ 3, 78, 116, 127, and 136). But, the only allegation that NAW cites that comes close is a conclusory statement in paragraph 136, which states: "By enforcing the Act, Defendant, acting

under color of state law, is depriving NAW's members of their Fourteenth Amendment right against deprivation of property without due process of law." ECF No. 1 ¶ 136.[1] Although this sentence uses the word "property," it does not use the word "dues" as NAW implies. *See* ECF No. 31 at 7 (arguing that paragraph 136 "identifies a protected property interest by alleging that the Act compels producers to pay 'dues' to the [Producer Responsibility Organization] PRO"). And, more importantly, this sentence does not identify the actual property interests allegedly harmed. "For due process purposes, a property interest must be specific and presently enforceable." *Painter v. Shalala*, 97 F.3d 1351, 1357 (10th Cir. 1996).

However, even if paragraph 136 was enough to identify an interest, NAW still does not articulate a state private nondelegation claim. "[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings *developed by state officials*." *Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1189–90 (10th Cir. 2006) (emphasis added) (citing *Roth*, 408 U.S. at 577). Because NAW does not point to a state law which creates and defines its alleged interest, it has not met this "threshold requirement." *Feldon*, 2026 WL 2532218, at *22.

---

[1] Paragraph 3 alleges that the Producer Responsibility Program for Statewide Recycling Act, Colo. Rev. Stat. (C.R.S.) §§ 25-17-701 to 716 (the Act), "forces producers to 'join' the state's designated PRO, on the PRO's non-negotiable terms before their products may be sold in Colorado." ECF No. 1 ¶ 3. Paragraph 78 alleges the Act requires producers to pay dues. *Id.* ¶ 78. Paragraph 116 quotes the Fourteenth Amendment. *Id.* ¶ 116. And, paragraph 127 alleges that CAA regulates the "terms of conducting business" for NAW's members. *Id.* ¶ 127.

NAW next attempts to identify an alleged liberty interest to support its claim. ECF No. 31 at 7-8. However, this, too, fails, because NAW does not articulate an interest. Instead, NAW obliquely states that it "identifies a liberty interest *like the one* in *Carter Coal*" but does not specify what that interest is, whether it is held by NAW's members, or how this interest stems from state law*. Id.* at 7 (emphasis added). *Carter Coal* also does not state a specific interest, likely because the case hinged on congressional nondelegation under the Fifth Amendment, not state nondelegation under the Fourteenth Amendment. *See Carter Coal*, 298 U.S. at 311. NAW then turns to the *Amtrak* case to argue that its members' liberty is burdened because the designated PRO, Circular Action Alliance (CAA) is allegedly made up of competitors. But again, this does not state an actual liberty interest stemming from state law. *Elliott v. Martinez*, 740 F. Supp. 2d 1269, 1270–71 (D.N.M. 2010), *aff'd,* 675 F.3d 1241 (10th Cir. 2012) ("[A] legitimate claim of entitlement to a protected liberty interest is established when the language of the state statute places substantive limitations on official discretion.").

Finally, NAW argues that the Department misreads the *Feldon* decision because the Oregon Court did not consider this issue. ECF No. 31 at 8. But, it is NAW who misreads the decision. The Oregon Court directly considered whether NAW stated an interest in a section titled, "threshold requirement of a protected liberty or property interest." *Feldon*, 2026 WL 2532218, at *22-25. Just like the Oregon Court, the Department does not dispute that money can be a protected property interest. Instead, just like the Oregon Court, the Department disputes whether NAW has actually alleged a protected property right stemming from state law in its Complaint. It is not enough to allege that money is a property interest in the abstract. NAW must allege that state law

protects its members' interests in their own money and that the Program impermissibly harms that protected interest without due process of law. Because NAW does not do this, it fails to state a claim.

## II. The exhibits to NAW's Complaint contradict its allegations regarding the Department's oversight.

NAW's nondelegation and constitutional conditions claims also fall short because the facts in the Department-approved Program Plan attached to NAW's Complaint continue to contradict the facts cited in the Complaint.

As a threshold matter, NAW does not contest the rule that if its exhibits conflict with its allegations, the exhibits control. Instead, NAW argues that the facts from the Program Plan, and highlighted by the Department in its Motion to Dismiss, do not contradict NAW's allegations. NAW also contends that the Department's mechanisms for oversight are not similar to those in *Consumers' Research*, 606 U.S. at 692-93. ECF No. 31 at 8-10.[2]

NAW's second argument regarding the Department's oversight is irrelevant at this stage. The inquiry here is not whether the Department meets the agency oversight standard in *Consumers' Research*. Rather, it is whether NAW has stated a private nondelegation claim. And, once NAW states a claim, the burden on the Department is

---

[2] NAW also seems to argue that a complaint could meet the plausibility standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), even if specific facts are not alleged. *See* ECF No. 31 at 6 (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) for the proposition that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"). The *Pardus* case is irrelevant. There, the Supreme Court relied on the rule that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Pardus*, 551 U.S. at 94. This lower standard does not apply here.

low. "As long as an agency thus retains decision-making power, it may enlist private parties to give it recommendations." *Consumers' Rsch.*, 606 U.S. at 692.

Here, NAW's own allegations and the Program Plan both show that the Department retains sole decision-making power. For example, NAW admits that the Department approved CAA's Program Plan. ECF No. 1 ¶ 59; ECF No. 31 at 9. NAW also acknowledges that CAA's Program Plan included a budget. ECF No. 1 ¶ 69 (citing page 176 of the Program Plan). Thus, by approving the Program Plan, the Department approved CAA's proposed budget, and as the Program Plan states, "CAA Colorado must comply with the Colorado [Extended Producer Responsibility] EPR Law, the Colorado Regulations, and the Colorado Program Plan approved by CDPHE." ECF No. 1-1 at 67. Yet, NAW continues to allege that the Act "does not require the plan to commit the PRO to a budget." ECF No. 31 at 4; *see also* ECF No. 1 at 68-69. However, because the Program Plan contradicts NAW's allegations, this argument fails.

The Act also makes it clear that the Department approves producer dues calculations through its approval of the Program Plan.

> *To be approved*, a plan proposal must . . . establish a funding mechanism that . . . is funded through producer responsibility dues. The producer responsibility dues must vary by the type of covered material, whether or not the material is readily recyclable, and be based on the net recycling services costs for each covered material in the state.

C.R.S. § 25-17-705(4)(i) (emphasis added). The Act also requires[3] the Plan Proposal to "[i]nclude a proposed budget and a description of the process used to determine producer responsibility dues." C.R.S. § 25-17-705(4)(m). The Program Plan met these

---

[3] NAW describes the Act's requirements as "guidelines." ECF No. 31 at 2. The Act's requirements and the provision in the Program Plan are not voluntary, they are binding.

requirements and as a result, the Department approved it. For example, the Program Plan includes a producer dues table. ECF No. 1-1 at 190. And, although this table is illustrative and the Act allows CAA to change the end dues, these changes are limited to "updates . . . to reflect changes in program costs and relevant plan revisions." C.R.S. § 25-17-705(4)(i)(III)(C). CAA cannot change the producer dues calculation mechanism. The Department also reviews and approves any updates to producer dues through the annual reporting process, can require plan amendments as needed, and meets with CAA to review any proposed updates. C.R.S. §§ 25-17-709(2)(a) and (3), 705(6)(a). In short, NAW attached the Program Plan to its Complaint, the Program Plan contradicts the Complaint on its face, and exhibits control over allegations made in the Complaint. Therefore, NAW's nondelegation and constitutional conditions claims fail.

Finally, NAW misunderstands the Advisory Board's role. The Advisory Board is an agency within the Department, C.R.S. § 25-17-704(1), its members are appointed by the Department, C.R.S. § 25-17-704(2)(a), the Department has a representative on the Board, C.R.S. § 25-17-704(2)(a)(XII), and the entire purpose of the Board is to make recommendations to facilitate the Department's *approval, rejection, or revision* of CAA's Program Plan. C.R.S. §§ 25-17-704(7)(e), 705(4)(aa), 705(5)(b). Thus, although the Department agrees the Board is advisory, the Board's review process is relevant to demonstrate *how* the Department exercised its decision-making power, that the Department's oversight is in fact meaningful and guided by outside experts, and that NAW chose not to provide input through the many available opportunities.

### III. The exhibits to NAW's Complaint contradict its allegations regarding the individual program plan option.

NAW's final arguments attempt to defeat the Department's contention that NAW's members had a choice when deciding how to participate in the program.[4]

As a threshold matter, NAW's Complaint still does not "identify an enumerated right that [the Program] coerces [it] into giving up." *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1070 (D.N.M. 2022). NAW's members can still conduct business in Colorado. As NAW admits, its members also still have the right to judicial review, even if it is not NAW's preferred form of judicial review. *See* ECF No. 31 at 14. ("This sentence [in the Colorado addendum] permits parties to seek judicial relief for two purposes."). Moreover, even if judicial review did not exist, as the Oregon Court found, "arbitration before a neutral decisionmaker can provide sufficient due process." *Feldon*, 2026 WL 2532218, at *29 (citing *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 895 (2d Cir. 1991)). And, NAW's newly alleged right to "access the Colorado market," ECF No. 31 at 2, is not in its Complaint. *See generally* ECF No. 1.

Second, nothing in the Act forced NAW's members to join CAA. Instead, NAW's members chose to do so by not submitting an individual program plan (IPP). NAW's Complaint does not allege that any of its 3,000 members attempted to submit an IPP and were denied. And, nothing in the Act prevents any of NAW's 3,000 members from

[4] NAW also contends that the covered material exemption by rule option is too speculative to count. ECF No. 31 at 11-12. Because NAW has not disclosed its membership list or the types of covered materials produced by its members, the Department cannot add additional details. However, this does not make this option unavailable, and NAW's allegation that its members produce "millions of different products" is irrelevant because the exemption is based on covered material type, e.g., plastic, not product type. C.R.S. § 25-17-703(13)(b)(XV).

submitting an IPP in the future. C.R.S. § 25-17-705(8)(a) ("On January 1, 2025, and *each January 1 thereafter*, as an alternative to participating in the program, a producer may submit to the advisory board an [IPP] proposal.") (emphasis added).

Finally, NAW's allegation that an IPP is "illusory" is directly contradicted by the Department's approval of an IPP. *See* ECF No. 1-1 at 100 ("A separate [IPP] has been submitted by [Lubricants Packaging Management Association] LPMA to the Colorado Department of Public Health and Environment (CDPHE) outlining how producers shall register and how [lubricants packaging] will be handled."). NAW may not like the requirements for an IPP and believe they are difficult to achieve, but because NAW has not attempted to submit an IPP and one in fact exists, as shown by an exhibit to NAW's Complaint, the Court ought not take NAW's allegations that such option is "illusory" and "nominal" as true.

## CONCLUSION

In sum, this Court should dismiss NAW's two due process claims for failure to state a claim.

Dated November 17, 2026.

PHILIP J. WEISER
Attorney General

s/ Rebecca J. Fischer

***Rebecca J. Fischer****
***Pawan Nelson****
Senior Assistant Attorneys General
Office of the Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6265
E-mail: rebecca.fischer@coag.gov
Attorneys for Colorado Department of Public Health and Environment
*Counsel of Record

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2026, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S DUE PROCESS CLAIMS (ECF No. 20)** by filing it with the Clerk of Court using the CM/ECF system which will send notification of such filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

s/ Laura F. Kelly

***Laura F. Kelly***
Senior Paralegal
Hazardous and Solid Waste/CERCLA Unit
Natural Resources and Environment Section
Office of the Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6301
E-mail: laura.kelly@coag.gov